STATE of Missouri, Respondent,

v.

Robert Alexander PITCHFORD, Appellant.

No. 47161.

Supreme Court of Missouri,

Division No. 1.

June 8, 1959.

William R. O'Toole, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Robert E. Hogan, Sp. Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Robert Alexander Pitchford was found guilty of the offense of robbery in the first degree. The jury fixed his punishment at imprisonment in the penitentiary for a term of eight years. See Sections 560.120 and 560.135 (unless otherwise indicated all statutory references are to RSMo 1949, V.A. M.S.). He has duly appealed from the ensuing judgment. Defendant has not filed a brief in this court and hence we must review the eighteen assignments contained in his motion for new trial. Those assignments relate primarily to contentions that the court erred in the admission or exclusion of evidence and in refusing to declare a mistrial because of the alleged prejudicial argument of the assistant circuit attorney. Since there is no contention that the evidence was insufficient to support the judgment we need not state the facts in detail.

For a number of years Mrs. Elizabeth Thielen, an elderly widow, had operated a large rooming house at 4479 Washington Avenue, St. Louis, Missouri. On the evening of January 13, 1958, she and a companion were watching television in her living room on the first floor. At about 8 p. m. three colored men came to the house and asked to see Joe White, a tenant who

occupied a room on the third floor. They were admitted and went upstairs for a short time. The men soon returned to the first floor and entered the living room where they robbed Mrs. Thielen of approximately $69 in cash and also took two table radios. During the robbery one of the men (later identified as defendant) threatened Mrs. Thielen and her companion with a shotgun, and another (identified as Frank Chapman) displayed a "long knife."

There is no question about the fact that the robbery occurred and that Frank Chapman and Sterling Webster were two of the three men involved. The real issue in the case related to the identity of the third man. Mrs. Thielen identified defendant as the man who held the shotgun. She testified that she had known him because he had roomed at her house for a month or more in the early part of 1957; that he then used the name of Robert Fleming and that she had pointed him out in the "line-up" shortly after his arrest.

Frank Chapman testified that he was 15 years old and was "in charge" of the juvenile court. He testified that he, Webster, and defendant (whom he referred to as "Little Robert") had robbed Mrs. Thielen on the occasion heretofore described. He stated further that defendant had mentioned that he had previously roomed there and that Mrs. Thielen collected the rent on Sunday and should have quite a bit of money on Monday (the day of the instant robbery).

Sterling Webster testified on behalf of defendant. He admitted that he had participated in the "holdup," had entered a plea of guilty to that charge, and had been sentenced to thirteen years' imprisonment therefor. He identified Frank Chapman as one of the participants but stated that defendant was not involved in the robbery. The "third man" was known to the witness only as "Robert."

Defendant did not testify. He sought to establish an alibi by the testimony of his sister, Mrs. Margaret Mills, who stated that defendant had been in her home during all of the evening of January 13, 1958.

There was evidence that the three who participated in the robbery had spent some time in the home of Webster's mother, Julia Mosby, on January 13 and during the preceding day or two. Defendant called Webster's mother and sister as witnesses and they each stated that they had never seen the defendant prior to their appearance in court.

The first assignment in the motion for new trial is that the court erred in permitting the assistant circuit attorney to state in his opening statement that Mrs. Thielen had pointed out the defendant in a police line-up. The second assignment relates to the fact that Mrs. Thielen was permitted to testify to that fact. Our ruling on the second assignment will also dispose of the first. The motion recites that "such evidence was inadmissible because it constituted hearsay, denied the defendant the right of confrontation and cross-examination of his accusers and was an improper attempt to corroborate the identification of the defendant made by the prosecuting witness at the trial by ex parte, unsworn testimony, without any prior impeachment of the prosecuting witnesses' identification of the defendant."

 The quoted contentions are without merit. We have heretofore held that a witness may properly be permitted to give corroborating testimony to the effect that he has also identified defendant in a police "line-up." State v. DePoortere, Mo.Sup., 303 S.W.2d 920. Such evidence is not hearsay. It is testimony as to a fact concerning which the witness has personal knowledge. Moreover, it is obvious that defendant was not denied the right of confrontation or cross-examination. The witness appeared in open court and was cross-examined extensively by counsel for defendant concerning every phase of her testimony.

 Another assignment relates to the testimony of Joe White. This witness tes-

tified that he had seen Webster and two other men at the Thielen house on the night in question. He further stated that he had seen Webster and Chapman in the police line-up. Then the following occurred: "Q. What about the third man. Did you see him any time after that night? A. Well, I saw him in the line-up—I guess—they say that was him, I don't know him. Mr. O'Toole: I am going to object to what anybody else said; ask the jury be instructed to disregard it and a mistrial declared; it is not binding on this defendant. The Court: I overrule it; it is not identifying anybody yet." The answer of the witness and the ruling of the court did not constitute prejudicial error. There is nothing in the testimony of White to indicate that the "third man" "they" referred to was the defendant. He had specifically testified that Webster was the only one of the three that he had seen well enough to identify and that he did not know the defendant.

▮ Assignments 4 and 8 relate to the fact that two police officers were permitted to testify that they had known defendant prior to the time of his arrest. It is said that such testimony would tend to indicate that defendant had a police record and resulted in the State putting defendant's character in issue. The contention is unsound. It is well known that most police officers have a wide acquaintance among the citizenry in general and the fact that a person is known to a police officer does not necessarily convey the impression that he has a criminal record.

▮ The officers also testified that defendant was known by the nickname "Little Robert." It is contended that the court erred in permitting them to testify concerning defendant's nickname because such was hearsay and also tended to convey the impression that defendant had a criminal record, etc. We have heretofore ruled that "Evidence of the name by which a person is known is not within the rule excluding hearsay evidence." State v.

Francies, Mo.Sup., 295 S.W.2d 8, 11. We note also that Frank Chapman; who testified that defendant participated in the robbery, repeatedly referred to defendant as "Little Robert." It would therefore seem material and proper that the State be permitted to show by other witnesses that defendant was known by that nickname. Moreover, we are unable to see anything derogatory about that particular nickname. It may have resulted from the fact that defendant was physically of small stature. In any event we see nothing in the nickname, "Little Robert," which would indicate that defendant had a criminal record or was a person of unsavory reputation.

The sixth assignment in the motion for new trial is that the court erred in permitting Officer Kidd to testify that Mrs. Thielen pointed out defendant in a police line-up. It is said that such evidence was hearsay. The difficulty with that contention is that it is not supported by the record. The transcript discloses that Officer Kidd merely testified that Mrs. Thielen had the opportunity to see the defendant in a "shadow box" or "line-up." Such testimony did not constitute hearsay and would not appear to have been objectionable for any other reason. We rule this point against defendant.

▮ In his cross-examination of Officer Broaders, defendant was attempting to determine the date upon which certain other officers had entered the investigation. In that connection the following appears: "Q. Would it be fair to say sometime after January 17th? A. Yes, sir, because on January 17th our report went down to arrest 'Little Robert' and they took it up from there." Defendant, contending that the answer was not responsive, was hearsay, and prejudicial to his rights, moved that it be stricken and a mistrial declared. His motion for new trial contains an assignment that the trial court erred in overruling his said motion. While the portion of the answer complained of was not di-

rectly responsive, it was the statement of a reason for the affirmative answer of the witness. We have decided that we need not determine whether the ruling of the court was error because the testimony could not have resulted in any substantial prejudice to defendant. It appears from other testimony of the witness that the "Little Robert" referred to in the foregoing answer had not, at that time, been identified as the defendant. However, even if we should assume that the testimony referred to an order to arrest the defendant, it does not appear that he could have been prejudiced by it. Every defendant is arrested before he is placed on trial for the crime with which he is charged. Under the circumstances presented in this record, we are unable to see how defendant could have been prejudiced by testimony that his arrest had been ordered on a certain day.

■ There is no merit in the assignment that the court erred in denying defendant the right to prove (by cross-examination and by record evidence) prior juvenile "convictions" of Frank Chapman in order to impeach the credibility of that witness. It is well settled that under Section 211.271 (see pocket part 12 V.A.M.S.) and prior statutes containing similar provisions, the disposition of a case in the juvenile court shall not be deemed a conviction of a crime and may not be shown for the purpose of impeaching the testimony of the child if he shall thereafter appear in court as a witness. State v. Coffman, 360 Mo. 782, 230 S.W.2d 761.

Assignments 11 and 12 relate to the alleged error of the court in refusing to permit defendant to show in his cross-examination of Frank Chapman that said witness was staying at the St. Louis State Hospital and in refusing the offer to prove by the records of the juvenile court that said court had ordered his confinement in that hospital. It is said that "such evidence was proper as affecting the competency or mental capacity of the witness and was a proper fact to be considered by the jury in weighing the testimony of the witness."

Defendant did not seek to prove by voir dire examination of the witness before the court that he was of unsound mind or otherwise mentally incompetent to testify. While a lengthy colloquy occurred between the court and counsel in regard to the matter, no competent evidence was offered tending to prove the mental incapacity of the witness.

It does not seem to have been defendant's position that the witness was wholly incompetent to testify, but he appears to have taken the position that evidence to the effect that Frank Chapman was suffering from a mental illness or was in a mental hospital was admissible and should have been heard by the jury so that it could determine the weight and value to be accorded the testimony of the witness. It is our view that if defendant had offered evidence tending to prove that this witness was suffering from mental impairment or disease, that evidence would have been admissible so that the jury could have considered that fact in determining the weight and value, if any, it would give to his testimony. State v. Pierson, 337 Mo. 475, 85 S.W.2d 48.

It appears from the record that at the time of the instant trial a proceeding was pending in juvenile court against Frank Chapman and that there had been no final disposition of that cause. In that connection we note the provisions of Section 211.-161 (see pocket part, Vol. 12, V.A.M.S.), as follows: "1. The court may cause any child within its jurisdiction to be examined by a physician, psychiatrist or psychologist appointed by the court in order that the condition of the child may be given consideration in the disposition of his case. The expenses of the examination, when approved by the court shall be paid by the county. 2. The services of a state, county or municipally maintained hospital, institution, or psychiatric or health clinic may be

used for the purpose of this examination and treatment." There is no evidence as to why Chapman was staying at the hospital but the assistant circuit attorney, during the colloquy (and out of the hearing of the jury), made the following statement which apparently was accepted as correct by the court and counsel for defendant: "Mr. Cahill: This youngster was sent to the hospital because many years ago, some seven or eight years ago, he had an epileptic seizure. The statute provides where there is any record whatsoever on the part of a juvenile, he must first of all be examined by the hospital. This boy has not had any seizure of any major kind for four or five years. He has an IQ which I understand is especially high and considered by everybody over there a particularly brilliant boy. This one instance of epilepsy precluded the court from sending him to a normal institution until he had an examination at the hospital. They found he is not under any psychiatry."

We have studied the many pages of the transcript which disclose the statements of the court and counsel during the discussion of this matter and find that it is somewhat difficult to determine just what defendant offered to prove. However, we have determined that he made two proper offers and we will consider whether any prejudicial error occurred in the rulings of the court thereon. One offer and the ruling of the court is as follows: "Mr. O'Toole: I would like to call the witness, parole officer, Mr. Tripp, I believe his name is, and inquire of him relative to the diagnosis of the boy who will testify as a matter touching this boy's competent mental capacity, not otherwise. The Court: I decline to do that on the ground Mr. Tripp is not a qualified or shown to be a qualified psychiatrist. If he undertook to detail what the report says, it would be hearsay." After the court ruled, defendant's counsel conceded that the witness was not competent or qualified to testify as to the diagnosis and made no further effort to make such proof by that witness. It

is obvious that no error occurred in connection with the refusal of that offer.

The other offer of proof was to show by cross-examination of the witness that he was on the day of trial staying at the St. Louis State Hospital. The reason assigned by counsel for the admissibility of that evidence is that "the question of residence and occupation is generally a matter for the jury." The court sustained an objection to the offer. In fairness to the defendant, we think it must be said that considering the entire discussion he was actually contending that he should be permitted to show that the witness was staying in the hospital so that it might tend to create the impression that the witness was suffering from a mental disability.

■ We have concluded that we need not determine whether the court erred in sustaining the objection to that offer of proof because, even assuming that the evidence was admissible, we think no prejudicial error occurred in excluding it. In this case the court was dealing with a witness who was under the supervision of the juvenile court and who had been ordered to the hospital for an examination, as authorized by statute, in order to obtain information to be considered in the disposition of the juvenile case. Under those circumstances, the mere showing that the witness was staying in a mental hospital would have been very little, if any, proof that the witness was suffering from a mental disease and hence the exclusion of that evidence was not reversible error.

■ As we have indicated, defendant called Sterling Webster as a witness. During the examination counsel for defendant brought out that the witness had entered a plea of guilty to the charge of robbing Mrs. Thielen and had been sentenced to a term of 13 years' imprisonment. On redirect examination defendant's counsel questioned Webster concerning various details relating to his appearance in court, such as the presence of the

circuit attorney and the appointment of an attorney to represent defendant. At that point the following occurred:

"Q. When the circuit attorney stood up in that court—

"Mr. Cahill: Just a minute. Now, I'm going to object to that, your honor.

"The Court: Gentlemen, that case has been tried, and I am not going to let you impeach the record—be seated and stop this line of questioning. I am not going to let you impeach another court unless you file a direct proceeding against it. Act like we are lawyers. Let's pretend like we are. No more of that."

It is contended in the motion for new trial that the remarks of the trial court in rebuking counsel for defendant prejudiced the defendant with the jury and deprived him of a fair trial. It would appear that the trial court ruled correctly in refusing to permit the showing of various details concerning the proceedings in connection with the disposition of the case against Webster. It is true that the remarks quoted indicate some irritation and petulance on the part of the court in regard to the manner in which the witness had been examined, but nothing occurred to demonstrate that the court was not acting impartially, or that the jury was so influenced by the court's remarks as to deprive defendant of a fair trial. We rule this assignment against the defendant. Mercer v. Millers' Mut. Fire Ins. Ass'n, Mo.Sup., 249 S.W.2d 402.

The remaining assignments relate to rulings of the court in connection with the argument of the assistant circuit attorney to the jury. The first contention is that the court erred in overruling defendant's objection to the statement that if defendant wanted Mrs. Thielen's books produced he could have caused a subpoena to issue and they would have been brought in. Mrs. Thielen had testified that defend-

ant had roomed at her house for several weeks in 1957 using the name Robert Fleming. On cross-examination she stated that she had a receipt book and another book containing information concerning her tenants (including Robert Fleming) which was at home. Apparently the inference is that these records would have corroborated her testimony that defendant, under the name of Robert Fleming, had roomed at her house. While Mrs. Thielen was the prosecuting witness and hence not equally available to defendant, we observe that the instant argument related to a collateral corroborative issue. In any event we have concluded that the ruling of the court did not constitute reversible error because the argument complained of had been invited by defendant's counsel. In his argument defendant's counsel referred to the failure of Mrs. Thielen to bring in her books and then stated, "they are going to say to you, 'why didn't he bring them in?' Me. Well, gentlemen, Mrs. Thielen is their witness. Mrs. Thielen prepared these books and records, whatever they are. They vouch for her credibility; presumably, they would vouch for the credibility of her record. If I would bring them in, I have to vouch for the credibility of the record made by the State's witness, and, gentlemen, I simply cannot do that." Since Mr. O'Toole had predicted that the circuit attorney would make the statement now complained of, and then explained why he did not cause the records to be brought in, we think it was not prejudicial error for the circuit attorney to be permitted to comply with the prediction of defendant's counsel and make the statement heretofore referred to. State v. Wells, Mo.Sup., 305 S.W.2d 457.

At another point in the argument the circuit attorney referred to the defendant as being "all dressed up in a brown suit." Upon objection the court struck out the words "all" and "up" so that the statement remained "dressed in a brown suit." In the motion for new trial it is said that the statement was so inflammatory and prejudicial that the court should have sus-

692

tained defendant's motion for a mistrial. We are unable to find any merit in that contention. Several witnesses, in identifying defendant at the trial, referred to him as the man in the brown suit. It was not error for the court to permit the circuit attorney to refer to defendant in the same manner.

The next assignment relates to the following argument, objection and ruling:

"Don't let this man go out free. Don't let him walk out free, because Sterling Webster tells you he is not the man. Two men are already incarcerated—I—

"Mr. O'Toole: I object to that as being outside of the record. Only one man has been incarcerated, Sterling Webster. I ask that be stricken and the jury instructed to disregard that, and a mistrial declared.

"The Court: I sustain the objection to the word 'incarcerated.' Gentlemen of the jury, you remember the testimony. Base your verdict on that.

"Mr. Cahill (continuing): Yes, sir. And one man in the hands of the juvenile authorities, and the other in the penitentiary."

Defendant contends that the court should have declared a mistrial because the statement complained of permitted the jury to infer that Chapman had been punished for his part in the crime and hence had no reason to do other than testify truthfully. We think the action of the court in failing to declare a mistrial was proper. Any inaccuracy in the statement complained of was promptly corrected by the ruling of the court and the subsequent explanation of the circuit attorney when he stated that one man was in the hands of the juvenile authorities and the other in the penitentiary. The jury could not have been misled.

Complaint is also made in regard to the refusal of the court to declare a mistrial because of a similar statement of the circuit attorney when, in referring to the fact that Frank Chapman was in the custody of juvenile authorities, he stated:

"He is under their custody and care—commitment in this—

"Mr. O'Toole: I object to commitment.

"The Court: I sustain the objection to the question of commitment. That is a legal phrase.

"Mr. O'Toole: I ask it be stricken and the jury instructed to disregard it and a mistrial be declared.

"The Court: I will deny the request. * * *

"Mr. Cahill (continuing): Now, then, this youngster who is in the custody of juvenile authorities * * *."

The court properly denied the request for a mistrial. Any inference the jury might have drawn from the use of the word "commitment" would have been immediately eradicated by the court's sustention of the objection and the correct statement of the circuit attorney which followed the ruling.

We have examined the record and find no error in regard to the matters not required to be preserved in the motion for new trial. We have concluded that the defendant was afforded a fair trial and that the judgment should be affirmed. It is so ordered.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.