STATE of Missouri, Respondent,

v.

Charles ROBERTSON, Appellant.

No. 47352.

Supreme Court of Missouri,

Division No. 1.

Nov. 9, 1959.

578

Raymond A. Bruntrager, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

Defendant has appealed from a sentence of life imprisonment in the penitentiary imposed upon him in accordance with the verdict of a jury finding him guilty of forcible rape and the further finding under the Second Offense Act (prior to its amendment in 1959) that he had theretofore been convicted of a felony, all as charged in the indictment. He has filed no brief and we therefore review the valid assignments of error set forth in the motion for new trial and the essential portions of the record as required by S.Ct. Rules 27.20 and 28.02, 42 V.A.M.S.

The motion sets forth twenty assignments of error in the admission and exclusion of evidence, the refusal of the court to declare a mistrial on grounds of allegedly improper arguments and misconduct of counsel for the State, and closes with a challenge to the sufficiency of the evidence to support the verdict.

■ With the exception of the testimony of a chemist produced by defendant, all of the evidence was adduced by the State. It warrants a finding of the following facts: On June 20, 1958, the prosecuting witness, Mrs. Virginia Diamond, resided with her husband and their twelve-year-old daughter, Carlon, in a third floor apartment at 4125 Westminster, St. Louis, Missouri. About one o'clock that afternoon, Police Officer Charles Pisoni saw and talked with defendant, whom he knew, at a tavern situate about one and one-half blocks from the apartment in which the Diamond family lived.. Pisoni described defendant, a white man, as having a "sort of suntan complexion—kind of dark," wearing a light tan hat with a dark band, a cream-colored shirt and brown trousers. Defendant had been drinking but was not drunk.

About two o'clock, p. m., Mrs. Diamond was alone in her apartment, working in her bedroom. At that time a man entered the bedroom in which she was working. He held a weapon, which appeared to be a pair of scissors partially covered with cloth, against her stomach and said, "You got any money?" She took two ten dollar bills from a purse and gave them to him. He cautioned her to stay in the room and walked out. After about two minutes she peeped out the door and saw him standing there. He came back into the bedroom and demanded that she remove her clothing. She began to scream. He jerked her clothing off her and struck her in the face, breaking her nose and causing it to bleed profusely. She grabbed up her clothing as best she could and put it up in front of her. He accompanied her to the bathroom, permitted her to wash the blood from her face

and then brought her back into the bedroom, where he threatened to cut her throat. He pushed her down on the bed and forcibly committed upon her a complete act of sexual intercourse, during the course of which he removed the belt from his trousers and placed it on the bed. Upon completion of the assault, he left the apartment by the rear door, carrying the belt in his hand. Mrs. Diamond ran out the front way to the first floor and thence to the second floor apartment of Mrs. Sartain and related to her what had happened. The police were notified. Mrs. Taff, who lived in an apartment on the second floor, heard the commotion in the Diamond apartment and heard Mrs. Diamond say, "Oh, please don't." Shortly thereafter Mrs. Taff saw a man come down the fire escape at the rear of the apartment building. He appeared to be 35 or 40 years of age and wore a tan sport shirt, brown trousers, tan straw hat and had a belt in his hand. Mrs. Taff also saw Mrs. Diamond in the hallway and noticed the bloody condition of her face. About that time, Mrs. Diamond's daughter, Carlon, and a boy named Merrell Austin, with whom she was playing in a yard in the rear of the apartment building, also saw a man come from the building. He spoke to them as he passed.

Upon arrival of Police Officer Kreuger at the apartment, he found Mrs. Diamond hysterical and bleeding from the face. After procuring a description of her assailant and the clothing worn by him, he sent her to the hospital, where she was examined by Dr. Arthur Greenbank: The doctor found her nose broken; her female organs showed an abrasion; and a laboratory examination of smears taken from them revealed the presence of spermatozoa.

During the period of time her assailant was in the bedroom, Mrs. Diamond observed his features and clothing. He was a large, heavily built, broad shouldered man, about 5 feet, 10 inches, in height, of a tannish-brown complexion, had high cheek bones, a small sore on his lip, a cut on his left hand, and had been drinking. He wore a light tan hat with a dark band, a cream-colored shirt, brown trousers, and a tan belt with "white work" woven into it.

Following the arrest of defendant about 7:30 that evening, Mrs. Diamond, her daughter, Carlon, Merrell Austin and Mrs. Taff viewed defendant in a police "line-up". Mrs. Diamond there identified him as the man who had assaulted her. Mrs. Taff identified him as the man she had seen come down the rear fire escape past her apartment. Merrell Austin and Carlon also identified him as the man they saw leaving the apartment building and who had spoken to them as he passed. These witnesses again identified and pointed him out at the trial and identified the clothing which he had worn at the time of his arrest as being the same or similar to that worn by him when he was at the apartment building.

Records of the Circuit Court of the City of St. Louis and the City Workhouse of said City, placed in evidence by the State, showed the conviction and sentence of defendant to imprisonment in the City Workhouse for a term of six months for the felonious larceny of a motor vehicle, his imprisonment in accordance therewith and his discharge from imprisonment upon compliance with the sentence. Records of the Superior Court of the County of Los Angeles, State of California, and the Department of Corrections of that State, at Sacramento, placed in evidence by the State, showed the conviction by jury trial and sentence of defendant in February, 1940, to imprisonment in the State Prison at San Quentin (under the alias of John Rymar) for the crime of robbery in the first degree and his discharge therefrom in 1956 upon compliance with his sentence.

The evidence adduced in behalf of defendant consisted of the testimony of William Secunda, a chemist, employed in the police laboratory in St. Louis. He testified that he examined the person of and clothing worn by defendant and found no trace of seminal fluid on them and no fibers similar to the material of which the bedspread from

the bed upon which the rape occurred was made.

The evidence was clearly sufficient to support the verdict.

This brings us to consideration of the remaining assignments. Eight of these assignments allege error on the part of the court in permitting the State's attorney to read to the jury certain questions and answers contained in the depositions of Mrs. Diamond and Mrs. Taff taken by defendant prior to the trial.

During the cross-examination of Mrs. Diamond she was repetitiously interrogated with reference to the details of the assault made upon her, the clothing worn by defendant, the time consumed during the assault, the precise location of the cut she saw on defendant's hand, statements made by her relative to a 1953 picture of her alleged assailant shown to her by the police, the sore she saw on his lip, statements made by her at the police station, et cetera. Mrs. Taff was also repetitiously cross-examined relative to statements made by her at the police station concerning the description of the man she saw coming down the fire escape, the length of time she observed him, et cetera. In the cross-examination of these witnesses, counsel for defendant read to them isolated questions propounded to and answers made by them in their respective depositions in connection with the foregoing phases of their testimony. In that state of the record, the trial court, over objection of defendant, permitted the State to read to the jury, in rebuttal, additional portions of their depositions.

Assignments 1, 2 and 3 assert prejudicial error in permitting, in rebuttal, the reading of portions of the deposition of Mrs. Diamond relating to (1) the description of her assailant, (2) the details of the crime charged, and (3) the length of the time of the crime, on grounds that her testimony at the trial as to those matters had not been impeached, and that her statements read from the deposition were, therefore, self-serving, constituted hearsay and an effort to bolster her testimony. Assignment 7, in substance, asserts the same grounds with respect to the admission of the portion of the deposition of Mrs. Taff relating to the description of the man she saw on the fire escape and the clothing worn by him.

Assignment 4 asserts prejudicial error in permitting, in rebuttal, the reading of (1) a portion of Mrs. Diamond's deposition touching upon the location of the cut on her assailant's hand and (2) a portion thereof to the effect that she had told the police that the cut on his hand was between the index finger and thumb, which was contrary to her testimony at the trial that the cut was between his middle fingers, on grounds that such statements tended to impeach the State's own witness.

Assignments 5 and 6 assert prejudicial error in permitting the reading of the portion of Mrs. Diamond's deposition relative to (1) her statements that she had identified defendant at the police station and that she had there described the marks he had on his face, (2) her statements at the police station that defendant was the man who raped her and that others could hear her when she made the statements, and (3) a statement that the police had asked her if she was sure in her identification of defendant and that she had assured them she was sure, on grounds that such testimony permitted proof of unsworn extra-judicial statements and that no evidence had been introduced impeaching her on that phase of her testimony. Assignment 8, in substance, asserts the same error with regard to the admission of the portion of the deposition of Mrs. Taff relative to statements she made to the police in describing the man she saw on the fire escape and what the police had said to her and the answers she had given them.

The transcript consists of more than 300 pages, a large portion of which is taken up with repetitious cross-examination of Mrs. Diamond and Mrs. Taff concerning the happenings at the apartment building, the statements made by them when they viewed defendant at the police "line-up", and the

testimony given by them in their respective depositions. During that cross-examination, counsel for defendant read and interrogated them with reference to certain questions and answers given in their respective depositions. It would be an unrewarding task and unduly lengthen this opinion to set forth those questions and answers, interspersed by extended colloquy between counsel, the witnesses and the court. Suffice to say that the transcript shows that the questions and answers read from the depositions by counsel for defendant to these witnesses, without regard to additional portions of the context in which they appeared, were calculated to magnify beyond their just deserts the extent and importance of certain differences and variations between the testimony in the depositions and that given at the trial. Moreover, the transcript does not bear out defendant's contention that the witnesses had not been cross-examined at the trial concerning the subject matter contained in the extrajudicial statements made by them at the police station, as detailed in their respective depositions.

■■ The general rule is that when a witness is sought to be impeached at the trial by confronting him with answers contrary to or inconsistent with those given by him in a deposition, the party calling such witness may then be permitted to offer such additional parts of the deposition as are competent, relevant, and material to the rehabilitation of his testimony. Peppers v. St. Louis-San Francisco R. Co., 316 Mo. 1104, 295 S.W. 757, 762; Hoeffner v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 722, 731; State v. Graves, 352 Mo. 1102, 182 S.W.2d 46, 52–53. And the latitude allowed in that respect is addressed to the sound discretion of the trial court. Affronti v. United States, 8 Cir., 145 F.2d 3, 8; State v. Gerberding, Mo., 272 S.W.2d 230, 234. Under the record as made in this case, we cannot say that the court prejudicially abused its discretion in permitting the State to read the portions of the depositions of which defendant complains.

■ Assignment 9 is directed to the refusal of the court to declare a mistrial when Mrs. Diamond, upon leaving the witness stand, pointed to defendant and volunteered the statement, "That's the man there." In ruling the motion the court stated that, inasmuch as the witness, without objection, had twice theretofore during the trial pointed out defendant as the man who raped her and had repeatedly stated on direct and cross-examination that defendant was the man who raped her, her voluntary statement to that effect could not have prejudiced the fair trial of defendant and that any statement made by the court would only tend to emphasize the occurrence. We are convinced that her statement, although improper and uncalled for, added nothing new to the uncontradicted testimony theretofore given by her. The court did not abuse its discretion in ruling said motion. State v. Taylor, Mo., 324 S.W.2d 643, 647.

■ Assignment 10 is directed to admission of testimony of Mrs. Diamond that she had recognized defendant at the police station as the man who raped her and the testimony of Mrs. Taff that she recognized him as the man she saw come down the fire escape. Such testimony is generally held to be competent. Contentions identical to that here made have been ruled adversely to defendant in several recent cases. See State v. Pitchford, Mo., 324 S.W.2d 684, 687. We adhere to that ruling.

■ Assignment 11 challenges the admission of testimony of Police Officer Charles Pisoni that he had seen defendant at 11:00 a. m. and 1:00 p. m., on the day of the crime, on grounds that, in view of the testimony that the crime occurred at 2:00 p. m., such evidence was too remote and not part of the res gestae. When the further testimony of Pisoni describing the clothing worn by defendant at those hours, his presence in the vicinity of the crime at 1:00 p. m., and the fact that he had been drinking, is considered in connection with other evidence in the case, the competency

and materiality of the testimony complained of is clearly seen.

■ Assignment 12 challenges the admission of the further testimony of Pisoni that he "had known defendant before," on grounds that such a statement, standing alone, would lead the jury to believe that defendant was a police character and tended to place his character in issue. The contention is without merit. See State v. Pitchford, Mo., 324 S.W.2d 684, 688, wherein a similar contention was made.

■ Assignment 13 challenges admission of the testimony of Mrs. Taff that the "next time she saw defendant to recognize him [after seeing him come down the fire escape] was at the police station," on grounds that such testimony was proof of an extrajudicial statement upon which there had been no contradiction or impeachment and was self-serving hearsay. The contention is without merit and is overruled for the reasons stated in ruling Assignment 10.

■ Assignment 14 challenges the admission of State's Exhibit No. 15, "which purported to be a record of incarceration in the California Penitentiary of one John Rymar for robbery, into evidence, especially that part containing the fingerprint record of one John Rymar, for the reason that this record was attached merely by staples, that it was not properly certified to, nor a proper foundation laid for its introduction without a certification nor properly identified." The motion for new trial fails to state wherein the record was inadmissible by reason of the fingerprint record of defendant (alias John Rymar) being attached to his prison record by staples, or wherein it was not properly certified, or wherein no proper foundation was laid for its introduction, or wherein it was not properly identified. The bald conclusions set forth in the motion do not prove themselves. A careful reading of the exhibit as read into the record reveals nothing to support them. The contention is overruled. See State v. Lindner, Mo., 282 S.W.2d 547, 553 [13, 14].

■ Assignment 15 challenges admission of State's Exhibit 13, "which purported to be a record of one Charles Robertson having been confined in the workhouse of St. Louis in 1938 for the reason that the card introduced contained two sentences for larceny of a motor vehicle, although the Court record showed only one charge, and therefore was vague and confusing and permitted the State to decide without any evidence what part should be admitted into evidence and had no logical connection with previous exhibits." The transcript shows that there was introduced in evidence, without objection, the record of the Circuit Court of the City of St. Louis showing that, as alleged in the indictment, defendant had been sentenced on October 29, 1937, to imprisonment in the City Workhouse for a term of six months upon his plea of guilty to a charge of larceny of a motor vehicle; that Robert Koester, deputy warden of the St. Louis Workhouse, produced in court and identified the official workhouse record card for the defendant; that defendant objected to the card for the reason that it showed two sentences for larceny of a motor vehicle, one on October 29, 1937, and the other on October 30, 1937; that the card showed a single receipt date, November 3, 1937, and a single discharge date, April 25, 1938; that the court construed the card to mean that the defendant had received concurrent sentences for two offenses of larceny of a motor vehicle and permitted to be read into evidence that portion of the card showing the October 29, 1937, sentence, and the date of the receipt and discharge of the prisoner. Taking the card as construed by the court, and there is nothing in the record to the contrary, the assignment is without merit and must be overruled. See State v. Lindner, Mo., 282 S.W.2d 547, 553 [13, 14].

■ Assignment 16 complains of the admission into evidence and exhibition to the jury of State's Exhibit 7, a picture of Charles Robinson, on grounds it was never identified as a picture of defendant Charles Robertson, and that no proper foundation

was laid for its admission. The transcript shows that at the police station Mrs. Diamond was shown a picture of Charles Robinson taken in 1953, which she said did not "look like" the man who raped her. On redirect examination, she identified State's Exhibit 7 as the picture shown her and again said it was not defendant. On recross-examination she said if it was defendant's picture, his face was thinner than when the picture was taken. On further cross-examination, she said there was some resemblance. Although the picture was never positively identified as a picture of defendant, we think the court did not err in admitting it into evidence and in permitting it to be shown to the jury for its consideration in connection with the remainder of her testimony relating to her identification of defendant.

█ Assignment 17 asserts error in permitting the State's counsel, in final argument, to state that defendant had been convicted "on one of his alleged prior convictions by a jury." The records introduced in evidence showed that to be the fact and the evidence having been lawfully admitted under the Second Offense Act, Sections 556.280 and 556.290 RSMo 1949, V.A.M.S. (prior to its amendment in 1959), the statement was clearly admissible. State v. Russell, Mo., 324 S.W.2d 727, 731.

█ Assignment 18 asserts error in refusing defendant's motion for a mistrial based upon a statement during the final argument of the State's attorney that his purpose in introducing the prior convictions of defendant was only to show that "he (the defendant) was only out of the penitentiary four years in the past 20 years and that he had spent 16 years in prison," on grounds that such statement shows bad faith and was not related to a request for punishment, but rather was intended to influence the jury in determining guilt in the case. The transcript shows that the State's counsel, during the course of his argument, started a sentence: "Prior convictions were *pleased* (pleaded?) for one reason—in the last twenty-one years, the man seated here, has been out of prison only four years, and I think—," whereupon counsel for defendant interrupted with a motion for mistrial, on grounds that the argument was "highly prejudicial," which the court overruled. Counsel for the State then continued: "I am sure under the law, the court instructs you and the law of the State of Missouri, you must consider that in assessing punishment." Thus, the record shows that the statement, when completed, meant no more than that the reason for pleading the prior convictions was that they should be considered in assessing the defendant's punishment. Its purpose, no doubt, was to impress upon the jury that if it found the defendant guilty of the rape charged, then it should not ignore evidence relating to the prior convictions of defendant and should assess his punishment as required by law to be imposed upon persons convicted under the Second Offense Act. The court did not err in overruling the motion.

█ Assignment 19 complains of a statement made in the closing argument of the State's attorney, "I read the depositions over some difficulty—," at which point counsel for defendant interposed with the objection, " * * * that is a direct reflection *of* counsel," and moved for a mistrial, which the court overruled. No further reference to the matter is shown. Certainly, there was no direct reference to counsel and even if it be assumed that counsel for the State was referring to objections made by counsel for defendant, it is difficult to conceive how it could have had any prejudicial effect upon the jury. This court has frequently stated that the determination whether improper argument is so prejudicial under the facts of the particular case as to necessitate a reprimand of counsel or the declaration of a mistrial lies largely within the discretion of the trial court and that the appellate court will not interfere absent reasonable showing that the trial court abused its discretion. State v. Hardy, 365 Mo. 107, 276 S.W.2d 90, 95 [9]; State v. Tiedt, 360 Mo. 594, 229 S.W.

2d 582, 588 [11]. The argument complained of in this instance cannot be held to be so prejudicial as to show an abuse of discretion by the trial court in failing to take any corrective action.

Assignment 20 asserts error "in excluding competent testimony by overruling defendant's request to permit witness Palmer Kreuger, a police officer, to review his notes and to testify from his present memory refreshed concerning the statements of witness Virginia Diamond made in connection with the picture of Charles Robinson previously introduced and the identification she made of this picture, a very material matter, and in overruling the defendant's offer of proof showing that the witness had himself made notes of all of the witnesses' statements concerning the picture that such notes were still available and if permitted to refresh his memory some statements in the nature of impeachment of witness Diamond could have been introduced into evidence since the witness herself had already been questioned in detail concerning the picture and therefore was a proper subject of inquiry and by its action the court unnecessarily limited the defendant's right of cross-examination to the defendant's prejudice."

In cross-examination of Officer Kreuger, defendant's counsel interrogated him as to statements made to him by Mrs. Diamond relating to the picture (State's Exhibit 7) shown to her during the course of her identification of defendant as her assailant. He elicited testimony from Kreuger that Mrs. Diamond had stated there was a resemblance between the nose and chin of the person shown in the picture and those of her assailant. He then asked Kreuger whether Mrs. Diamond had not also indicated that there was a resemblance with respect to the eyes of the person pictured and those of her assailant. When Kreuger testified that he could not remember whether Mrs. Diamond had said anything about the eyes, counsel for defendant insisted that the police report prepared by Kreuger would reflect *whether* Mrs. Diamond had said anything about the resemblance of the eyes, and that, if Kreuger were permitted to review the report to refresh his memory, he would be able to testify *whether* Mrs. Diamond had made any statements concerning the resemblance of the eyes. There was no proof, or offer of proof, of the contents of the police report; it was not produced, nor was there a request that it be produced. Consequently, there is nothing in the record to show whether the report contained anything with respect to statements made by Mrs. Diamond concerning the resemblance of the eyes of the man pictured and those of her assailant or whether the witness, having reviewed the report, could have added anything to his testimony. Clearly, defendant's complaints with respect to the rulings of the trial court on this subject have not been properly preserved for review. In a somewhat similar case, State v. Merrell, Mo., 263 S.W. 118, 123 [10], involving the use of former testimony of a witness to refresh his memory, this court said: "It would indeed be a travesty on justice to convict the trial court of error in the matter and order a retrial on that account, if it should later turn out that the former testimony of the witness was in accord with his testimony at the trial, and hence would not suggest any change in his testimony. If counsel desired to raise a question of this sort, it was his duty to put this court in a position to rule intelligently upon the question and not leave us entirely in the dark."

In any event, however, the defendant could not have been prejudiced by failing to get into evidence statements by Mrs. Diamond that there was a resemblance as to the eyes, assuming such statements were made. Mrs. Diamond had testified that she had told the police that the man pictured did not look like her assailant. On the other hand, she had also testified to the effect that the only difference which she had pointed out to the police was that the face of the man pictured was thinner; and

Kreuger had testified that she had said that there was a resemblance as to the nose and chin. In this situation, it does not appear that the fact that Mrs. Diamond did or did not say that there was a resemblance as to the eyes, as well as to the nose and chin, was of any real significance or could have had any material effect upon the jury.

The indictment duly charges defendant with the crime of which he was convicted. He was personally present and represented by competent counsel throughout all stages of the trial and after-trial proceedings. The verdict is in due form and the punishment is within the limits fixed by law. Allocution was granted and the judgment and sentence imposed is in accord with the verdict and constitutes a valid and binding judgment.

The judgment is affirmed.

All concur.