**STATE of Missouri, Plaintiff-Respondent,**

v.

**Quincy Ellis O'TOOLE a/k/a Quincy Ellis Toole, Defendant-Appellant.**

**No. 35899.**

Missouri Court of Appeals, St. Louis District, Division Three.

Feb. 25, 1975.

Charles D. Kitchin, Public Defender, James E. Waynne and James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, Asst. Atty. Gen., Jefferson City, and Brendan Ryan, Circuit Atty., and John F. White, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant appeals from a conviction of robbery in the first degree and sentence under the Second Offender Act [1] to fifteen years imprisonment. On appeal, defendant raises two points: 1) that the trial court erred in allowing the victim's testimony as to declarations made at a pretrial photographic identification of defendant; 2) that it was error to admit into evidence medical records of the victim's condition. We find no error and affirm the judgment.

The sufficiency of the evidence is not challenged. Onnist Thomas, a 60 year old man, lived alone in an apartment. On the evening of December 29, 1972, the defendant was admitted by Mr. Thomas into his apartment. Mr. Thomas had known the defendant since the previous summer and each had seen and visited the other almost daily since summer, with the defendant being a frequent visitor to Mr. Thomas' apartment. Shortly after admitting defendant, Mr. Thomas sat down and watched television. Suddenly, the defendant commenced striking Mr. Thomas in the

1. § 556.280 RSMo 1969, V.A.M.S.

face with his fists and beat Mr. Thomas into unconsciousness. While he was still conscious, Mr. Thomas observed the defendant take Mr. Thomas' watch from his wrist, and upon regaining consciousness, Mr. Thomas noticed that his television set and stereo system were gone and so was the defendant. Mr. Thomas called the police who took him to a hospital for treatment of his injuries. Mr. Thomas advised the police that the defendant had beaten and robbed him. At trial, Mr. Thomas was permitted to testify that the police had brought a stack of photographs to him for examination and that a photograph of defendant, which he recognized, was in the stack; that upon seeing the photograph of defendant he told the police "this is the man."

Medical records describing Mr. Thomas' injuries, diagnosis and treatment during his four day stay in the hospital as a result of defendant's attack were introduced and received into evidence over defendant's objection that they were irrelevant and designed only to inflame the passion of the jury against defendant.

■ The defendant first contends that the trial court was in error in permitting Mr. Thomas to state that he had identified the defendant for the police from a stack of photographs. Defendant argues that the testimony of an unimpeached identifying witness concerning what he did or said and an extra judicial identification is inadmissible, relying on State v. Baldwin, 317 Mo. 759, 297 S.W. 10 (1927). We disagree. In State v. Baldwin, supra, it was held that an unimpeached identifying witness could not bolster his in-court identification by testifying as to what he did or said at an extra judicial photographic identification. The identifying witness was shown a photograph of the defendant at trial, and he testified that it was the same picture he had selected from a stack of photographs shown to him previously by the police. Since the witness' in-court identification had been unimpeached, the

court in holding that his testimony was inadmissible said:

"First, we rule that all that (the witness) testified to about what he did at the city jail as to identifying defendant's photograph, was evidence offered to bolster up his evidence as to identity while a witness on the stand, and was not only not relevant to any issue, but was highly prejudicial." 297 S.W. at 18.

Three years later the Missouri Supreme Court was confronted with a case in which the identifying witness testified that he "recognized" the defendant at a police line-up. State v. Buschman, 325 Mo. 553, 29 S.W.2d 688 (1930). This testimony was held to be admissible. In distinguishing the Baldwin case the court stated l.c. 690:

"It is clear from his quoted testimony that he used the word 'recognized' with reference to his own mental process, meaning merely that he knew or perceived defendant to be one of the men in question. The testimony condemned as incompetent and prejudicial in State v. Baldwin, supra, was testimony proving acts of the witness pointing out that defendant at the police station as the man who had robbed him, which acts were the same in effect and in principle as declarations of the witness that defendant was the man who had robbed him."

Thus, the court created the distinction between testimony that related to the identifying witness' natural process that he went through at the extra judicial identification, which would be admissible, and testimony that described what the witness said or did at the prior identification, which would be inadmissible. Defendant contends that since Mr. Thomas' testimony related to what he did and said when picking out the photograph, it does not fall within the type of testimony admissible under Buschman. However, the distinction drawn in the Baldwin case has not been adhered to in subsequent Missouri Supreme Court decisions that have dealt with testimony con-

cerning what a witness did at a line-up. State v. Pitchford, 324 S.W.2d 684 (Mo. 1959); State v. Nolan, 171 S.W.2d 653 (Mo.1943). In State v. Nolan, supra, several identifying witnesses testified that they personally identified the defendant at a line-up. The testimony was held admissible, the court stating:

". . . [T]he record disclosed that the witnesses did not testify that anyone else had identified appellant, but that the witness then testifying had identified him. This precise question was before this court in State v. Buschman (cite omitted). The subject was there considered at length and it was held that a witness may testify that he identified the defendant at police headquarters." 171 S.W.2d at 655.

Although Buschman is cited with approval, the word "identified" as used by the court, connotes more than a mere mental process of recognition, thus indicating the court's departure from strict adherence to the distinction created at Buschman. In State v. Pitchford, supra, the distinction was completely discarded. There, the identifying witness testified that she pointed out the defendant at a line-up. This is clearly testimony of what the witness did at a line-up, yet the court found such testimony admissible, stating, 324 S.W.2d at 687:

"We have heretofore held that a witness may properly be permitted to give corroborating testimony to the effect that he has also identified defendant in a police 'line-up.' State v. DePoortere, Mo. Sup., 303 S.W.2d 920. Such evidence is not hearsay. It is testimony as to a fact concerning which the witness has personal knowledge."

So, too, Mr. Thomas had personal knowledge of defendant and was merely identifying "his old acquaintance," Quincy O'Toole.

In State v. Rima, 395 S.W.2d 102 (Mo. banc 1965) the Missouri Supreme Court reevaluated the Baldwin decision in the context of testimony relating to a photograph identification. In Rima, the identifying witness testified that he identified the defendant's photograph at police headquarters. The court, in holding the testimony to be admissible, stated 395 S.W.2d at 105:

"The theory of the Baldwin case was that testimony of a witness concerning his identification of a photograph of the defendant therein was inadmissible because it was considered as a prior consistent statement for corroboration before any impeachment of the witness. (297 S.W. l.c. 15, 16.) The Baldwin case overlooked the fact that the testimony therein of the identification of the defendant's picture was the direct testimony of the witness himself and not the testimony of another as to a prior statement or identification such witness had made."

In overruling that aspect of the Baldwin case, however, the court clothed its ruling in terms of the Buschman distinction:

". . . [I]nsofar as State v. Baldwin holds that direct testimony of a witness that he recognized a photograph of a defendant as a person he saw, at the commission of the offense involved, was inadmissible it should no longer be followed. Therefore, we hold the statement of (the witness) concerning recognition of a picture of defendant was not a basis for claiming prejudicial error" 395 S.W.2d 106.

Although the language in Rima which appeared to revitalize the distinction created in the Buschman decision and perhaps raise doubt as to the admissibility of an identifying witness' testimony concerning what he said or did at a photographic identification, the Rima case was broadly construed one year later in State v. Hale, 400 S.W.2d 42 (Mo.1966), a case strikingly similar to the case we consider here. In State v. Hale, supra, the witness identified the defendant in court and also testified that he saw and pointed out a picture of

the defendant from a stack of photographs. In a reference to both Baldwin and Rima, and specifically referring to Baldwin as "bizarre", the court held the testimony to be admissible stating 400 S.W.2d at 45:

"While the present case could be distinguished on its precise circumstances (from State v. Baldwin), it is not necessary to do so and neither is it necessary to consider the rationale of that case. Upon this very subject State v. Baldwin was expressly overruled in State v. Rima."

The holding in State v. Hale is supported by language found in State v. De-Graffenreid, 477 S.W.2d 57 (Mo. banc 1972). In DeGraffenreid, the identifying witness testified that he had selected the defendant's picture from a stack of photographs and that he had also identified the defendant in a line-up. The testimony was not challenged on appeal by the court, nevertheless, it found that it would have been admissible as challenged, stating:

"As an identifying witness, his testimony concerning his extrajudicial identification of defendant by means of a photograph as well as by selecting defendant out of a lineup is admissible." 477 S.W.2d at 62.

Condemned in DeGraffenreid was the testimony of a third person who heard or observed the extrajudicial identification of an accused by the identifying witness as to the fact of identification. But such is not the case before us.

We find that the distinction drawn in State v. Buschman, supra, had been drained of its vitality by the subsequent Supreme Court decisions we have related. The erosion of State v. Baldwin, supra, is total and defendant's assertion of Baldwin at this time is anachronistic. The testimony of Mr. Thomas that he told the police that the picture he selected was that of the man who had beaten and robbed him is admissible under the authority of State v. Hale, supra. See also State v. Jenkins, 516 S.W.2d 522 (Mo.App.1974). We also note that as Mr. Thomas was well acquainted with defendant, the purpose of showing him photographs was not to suggest the identity of the defendant to Mr. Thomas but was to aide the police in their identification of the man known by Mr. Thomas.

■ The second point which defendant raises on appeal concerns the admissibility of portions of Mr. Thomas' hospital records that describe the extent of the injuries he sustained from the beating administered by the defendant. The defendant contends that the hospital records are irrelevant to any issue in the case and are inflammatory. This contention cannot be sustained. At trial, a defendant in a criminal proceeding is presumed innocent and the State is required to prove his guilt beyond a reasonable doubt. State v. Bryant, 507 S.W.2d 672 (Mo.App.1974). Here the defendant was charged with robbery in the first degree under § 560.120 RSMo 1969, V.A.M.S., and in order to convict defendant the State was required to prove beyond a reasonable doubt that defendant took the property of another from his person or in his presence and that the taking was against the owner's will by violence or by putting the person in immediate fear of personal injury. State v. Adams, 406 S.W.2d 608 (Mo.1966). The hospital records which tended to show that an alleged robbery victim was beaten are relevant to prove the essential element of violence required by the statute. The defendant argues that since the victim's own testimony relating to the fact that he had been beaten was not challenged, that there was no issue raised as to the element of violence. However, since the State has the burden of proving the defendant's guilt beyond a reasonable doubt, it should not be unduly limited in the quantum of its proof. The defendant in this case did not concede that Mr. Thomas had been beaten, and the State could not anticipate whether any of the elements of the crime charged would be challenged. Therefore, the State was properly permitted to introduce relevant evidence pertaining to a material matter at issue in the case, including evidence sup-

porting the allegation of robbery by violence, even though there may have been oral testimony which would support the allegation of violence. State v. Brandt, 467 S.W.2d 948 (Mo.1971); State v. Henderson, 510 S.W.2d 813 (Mo.App.1974); State v. Bryant, supra. Hospital records containing information as to injury, diagnosis and treatment are properly admissible. State v. Jenkins, supra.

While the defendant claims that the hospital records were prejudicial and inflammatory, the admission of potentially prejudicial or inflammatory evidence rests within the discretion of the trial court. State v. McCabe, 512 S.W.2d 442 (Mo. App.1974). We find no abuse of the trial court's discretion in admitting the hospital records in this case.

The judgment is affirmed.

SIMEONE, P. J., and McMILLIAN, J., concur.