THE STATE v. JOSEPH BUSCHMAN, *Alias* ARLINGTON J. FOLSOM, Appellant.—29 S. W. (2d) 688.

Division Two, June 11, 1930.

554

*Paul A. Richards* and *H. E. Grossenheider* for appellant.

*Stratton Shartel*, Attorney-General, and *Henry Depping*, Assistant Attorney-General, for respondent.

COOLEY, C.—Defendant and two others were charged by information in the Circuit Court of the City of St. Louis with the crime of robbery in the first degree. A former conviction of robbery in the first degree was alleged against defendant, thus making applicable the punishment prescribed by Section 3702, Revised Statutes 1919. A severance being granted, defendant was tried alone and was found guilty as charged, and his punishment assessed at life imprisonment. He appeals.

A brief statement of the facts will suffice for an understanding of the only questions urged upon this appeal.

The robbery was committed on Saturday, August 13, 1927, in the office of the Nicklin Tannery Company, a corporation, in St. Louis. About 12:30 P. M., Mr. Nicklin, president of the company, was in the office making up the weekly payroll for employees when several men, Nicklin said as many as four, all armed with pistols, appeared and by force and threats took from Nicklin $300.75 in money, part of which belonged to him and part to the company. At the trial Nicklin identified defendant as one of the robbers, stating that defendant was the first one who appeared at the office, that at the point of a pistol he had demanded the money, and that he was not masked at the time.

O'Dell Slattery was a witness for the State at defendant's preliminary examination, but was dead at the time of the trial, and his testimony given at the preliminary hearing was introduced at

the trial. It was to the effect that at the time of the robbery he worked at a blacksmith shop at the rear of the Nicklin tannery; that in the forenoon of the day of the robbery, defendant and several others came to the shop, armed themselves with pistols and watched Nicklin drive away and later return in his car. Nicklin's testimony shows that he had gone to a bank for the payroll money. Slattery testified that he saw defendant and at least one other go into the tannery building, one of the party remaining outside, and "after they got back they come through the shop with the money in a sack." "They came running in." Then they got in a car and drove away. Slattery testified that he knew the men, including defendant, by sight, having seen them before, and was certain in his identification.

Three police officers testified to statements, which they said had been voluntarily made to them by defendant, acknowledging his participation in the robbery. It was shown, in fact admitted, that defendant had previously been convicted on a plea of guilty of robbery in the first degree and had served a term in the penitentiary therefor and had been discharged.

Defendant testified, denying his presence at or participation in the robbery, and by himself and one witness gave testimony tending to prove an alibi.

Defendant urges in this court but two grounds for reversal of the judgment, viz., the admission of certain evidence, and a remark of the trial court made in overruling defendant's objection to the evidence.

Witness Nicklin had testified to the circumstances of the robbery and that after the robbers left he had reported it to the police. Then followed the testimony and the remark of the court complained of, which will be best understood if set out as it appears in the bill of exceptions:

"Q. When did you next hear anything or see anything of these men? A. I saw them on Sunday morning at police headquarters, Central District.

"Q. Who did you see?

"MR. RICHARDS (defendant's counsel): We will object to his testifying as to anybody he saw at police headquarters. It is immaterial, irrelevant, incompetent; it doesn't make any difference whether he saw them or not. The only question is whether he can identify them here at this time.

"THE COURT: He may answer.

"MR. RICHARDS: It doesn't tend to prove or disprove any issue in the case whether he saw him at headquarters or not.

"THE COURT: He may answer. I am going to let the Supreme Court rule again on that Baldwin case. If that is good law they will have to show me.

"MR. RICHARDS: We object to the remark of the court on the ground it indicates an opinion that the defendant will be convicted in this case, that being the only method by which the case could go to the Supreme Court. Defendant will ask that a mistrial be declared.

"THE COURT: Overruled.

"To which action and ruling of the court defendant by his counsel then and there duly excepted and still excepts.

"A. They lined up four men there, one of which I recognized.

"Q. Which one did you recognize?"

Objection was here made on the ground that "identification in the police station is totally inadmissible," which was overruled and exceptions saved. The question was not answered. Then follows:

"MR. RICHARDS: May it be understood that the same objection applies to these questions throughout?

"THE COURT: Yes.

"MR. STACK (State's counsel): Q. Who did you see there? A. I saw the defendant there.

"Q. This defendant, Joseph Buschman, *alias* Arlington J. Folsom? A. Yes, sir."

The evidence admitted over defendant's objection and of which he now complains, was the testimony of witness Nicklin that he saw and recognized defendant at the police station the day after the robbery. Defendant contends that such testimony was merely a bolstering up of Nicklin's testimony identifying defendant at the trial as one of the men who robbed him and that it was incompetent and prejudicial under the ruling of this court en banc in State v. Baldwin, 317 Mo. 759, 297 S. W. 10. In determining this question it is necessary to keep in mind just what the witness Nicklin did and did not testify, as well as to examine what was actually decided in the Baldwin case.

Nicklin's challenged testimony was only that he saw and recognized defendant at the police station. He did not testify, nor did any other witness, that he pointed out defendant or by word, sign or act communicated or indicated to any one the fact that he recognized defendant. It is clear from his quoted testimony that he used the word "recognized" with reference to his own mental process, meaning merely that he knew or perceived defendant to be one of the men in question. The testimony condemned as incompetent and prejudicial in State v. Baldwin, supra, was testimony proving acts of the witness pointing out that defendant at the police station as the man who had robbed him, which acts were the same in effect and in principle as declarations of the witness that defendant was the man who had robbed him.

The Baldwin case was a robbery case where, as here, the question of defendant's identity was a disputed one. In that case Smith, the prosecuting witness, testified without objection that he had gone to the police station two days after the robbery and was shown a large number of photographs from which he picked out one. Then, over defendant's objections, he was shown the photograph which he testified was the one he had picked out and was a picture of defendant. Over defendant's objections the State was permitted to prove by the photographer who had taken the picture that it was a photograph of defendant, a true picture of him when taken, and that it had been kept in the Bertillon room at police headquarters. The photograph was then introduced in evidence, defendant still objecting. In discussing the question, and holding the evidence incompetent as being evidence offered to bolster up Smith's testimony on the trial as to the identity of defendant, when the witness had not been impeached or discredited, the court treats the evidence relative to Smith's acts at the police station as equivalent to an extra-judicial statement or declaration of the witness that defendant was the man. This is apparent throughout the opinion. In the beginning of the discussion of this point the court says:

". . . Smith (in fact and in practice) says to the jury that, 'You should believe my testimony as to identity, because I identified his picture for the police force, two days after the robbery.' ".

It then says that as there was no attempt to impeach or discredit Smith his statement as to his prior act of identifying the picture was irrelevant, citing People v. Jung Hing, 212 N. Y. 393, 106 N. E. 105, Ann. Cas. 1915D, 333, quoting the statement of the annotator in Ann. Cas. 1915D, 333, 338, as follows:

"The proposition goes unchallenged in every jurisdiction save one that the prior consistent statements of a witness who has not been impeached are not admissible in evidence for the purpose of corroborating his testimony or of increasing his credibility."

Many cases are cited from this and other jurisdictions sustaining the proposition that "until a witness is assailed his testimony may not be bolstered up by showing good reputation, or by prior consistent statements."

In support of the statement that the above mentioned evidence (relative to identification of the photograph) was not relevant on the issue of identification, the court quotes extensively from the note on extra-judicial identification appended to the case of People v. Jung Hing, supra, in Ann. Cas. 1915D, 1. c. 341, and cites with approval Warren v. State, 103 Ark. 165, 146 S. W. 477, Ann. Cas. 1914B, 698, quoting the note appended to the report of the latter case in Ann. Cas. 1914B, 698, 700.

We have examined. People v. Jung Hing, and Warren v. State, supra, as well as the cases referred to in the notes from Ann. Cas. 1915D and 1914B above mentioned. In People v. Jung Hing, supra, defendant, a Chinaman, was placed in line with other Chinese and witnesses who knew defendant were brought in singly and "each in turn placed her hand on defendant as a token of her identification of defendant as the man who shot the deceased." Those acts of the witnesses in thus *pointing out* defendant were proved at the trial and that was held improper, the court saying, "This was in effect but a corroboration of these witnesses by their own previous declarations or acts." The court referred to the fact that the witnesses knew the defendant by sight or acquaintance and there being evidence pro and con by witnesses who knew him as to whether he was the man who did the shooting, the court said that the question of identification was close, not because the testimony was doubtful or uncertain, but because it was so direct and positive as to leave no alternative but to accept it as true or reject it as untrue.

In Warren v. State, supra, prosecutrix identified defendant, a Negro, at the trial as her assailant. She further testified that the day after defendant's arrest she went to the police station where he and two other Negroes were and immediately "identified" the defendant as her assailant. Two police officers testified that they stood defendant and the two other Negroes up against the wall and that when prosecutrix came into the room she immediately identified defendant as the man who had assaulted her. It is obvious that the term "identified" used in the opinion with reference to the prosecutrix's testimony refers to her act in pointing out defendant or otherwise indicating to the officers that he was the man. A motion was made to exclude the testimony of the two police officers, but there was no request for exclusion of the testimony of the prosecutrix as to her identification at the police station and the question of competency of that testimony is not discussed in the opinion. The court held the testimony of the police officers inadmissible, it having been offered as original evidence with no prior impeachment or discrediting of the prosecutrix. The opinion defines the court's understanding of the term "extra-judicial identification" thus: "It is next insisted that the court erred in refusing to exclude the testimony of the two officers as to the identification of defendant. This character of proof is referred to in the books as extra-judicial identification, and is generally held to be inadmissible" (citing cases). It is evidently with such meaning of the term in mind that the court further says: "Nowhere, so far as we can ascertain, has it ever been held that a so-called 'extra-judicial identification' is admissible as original testimony."

In all of the cases cited in the notes in Ann. Cas. 1914B and Ann. Cas. 1915D above mentioned, except State v. Egbert, 125 Iowa, 443, 101 N. W. 191, the extra-judicial identification under consideration and held inadmissible as hearsay or as a bolstering up of the witness's unimpeached testimony, consisted either of declarations of the witness or of acts of the witness pointing out the defendant, equivalent to a declaration, as in the Jung Hing and Warren cases.

State v. Egbert, supra, is the only case we have found in which the admissibility of testimony of the precise character of that here involved was ruled upon, and in that case it was held competent. In a few other cases such testimony had been admitted, but its competency was not questioned and hence not discussed. In State v. Egbert, supra, an assault with intent to ravish had been committed upon a girl. The next day the sheriff brought the defendant, whom he had arrested, into the presence of the girl for her to identify. She was allowed to testify that she had then recognized the defendant as the man who committed the assault and declared to others that she so recognized him. Objection was made to the testimony of witnesses as to what prosecutrix had said on that occasion. The court held that testimony as to what she had said was incompetent, that the State could not build up a case against defendant by proving declarations of the prosecuting witness with reference to his identity, and said further: " . . . no doubt as a witness she may testify that she recognized the defendant as the person who committed the crime, but what she said is not in itself competent evidence on the question of identity."

We have thus at some length discussed the Baldwin case, and the authorities therein cited and followed, in order to show that the question there considered and decided was the competency *vel non* of testimony offered as original evidence to prove in corroboration of an unimpeached witness that such witness had previously made declarations consistent with his testimony, or by acts equivalent to such declarations had designated or pointed out the defendant as the guilty person. It did not decide that testimony given by an identifying witness on the witness stand to the effect that such witness had on prior occasions, either before or after the commission of the offense for which defendant was on trial, seen the defendant and recognized or known him to be the person seen by the witness at the commission of the offense.

We can perceive no good reason why evidence of the latter character should not be held competent. Somewhat to the point, in People v. Wallin, 55 Mich. 497, 501, a witness was asked if he had any doubt that the man he saw on the occasion of the robbery was the defendant, which was objected to as not calling for the impression made on the witness's mind at the time but for his con-

clusion subsequently formed. In sustaining the competency of the question, COOLEY, C. J., for the court said:

"This conclusion might depend much upon the character of the witness: with one person an impression might strengthen until it became a certainty in the mind; with another, reflection might remove it. But while this may be true, we think the question unobjectionable. The witness had testified that he thought the man he saw was Wallin. If he, when testifying, had any doubt of the identity, it was proper to ascertain the fact; if he had none, the grounds of his belief might be inquired into. The jury were entitled to know what the witness knew respecting the identity, and how positive his knowledge was: if he was speaking doubtfully they should know it, and if with confidence, it was proper they should know the grounds of his confidence."

We know that impressions not firmly fixed in the mind are more likely to fade with lapse of time than those that have been more firmly and clearly impressed. Seeing a person repeatedly tends to fix in the mind the impression of that person's form and features so that memory of his appearance will likely be clearer and recognition of him more certain after the lapse of a considerable time than if he had been seen but once. If one sees another person but once, perhaps fleetingly or under stress of excitement without opportunity for careful observance, it is easily conceivable that he may know that person again if seen the next day but not be able so confidently to identify him if not seen again until six months or a year later. If he sees him again very soon and while the first impression is still clear in the mind, the second observation may tend to fix the impression in the observer's mind and memory and enable him later to recall and identify the subject of his observation more certainly, hence more satisfactorily from the standpoint of evidence. Applying these observations to the instant case, it may well be, indeed it is highly probable, that Mr. Nicklin, by seeing defendant the day following the robbery while the impression of defendant's appearance was still fresh in his mind, was enabled by that second and more careful observation so to fix defendant's appearance in his mind that eight months later at the trial he could be more certain in his identification than if he had seen defendant only at the time of the robbery. If so, that fact would add to the reliability and no doubt in the minds of the jurors to the weight of his testimony identifying defendant at the trial as the man who had robbed him.

The right of the State to prove that the witness Nicklin saw defendant prior to the robbery and knew him, had such been the fact, would not be questioned. Yet such evidence would have no bearing on the case except to enable the jury properly to weigh the witness's testimony that he recognized defendant at the trial as

his assailant. For like purpose and for the reasons above indicated it was competent for the witness to testify that he saw and recognized defendant the day after the robbery. Such evidence was not a bolstering of the witness's testimony by proof of extra-judicial declarations or acts. It was merely proving facts and circumstances calculated to enable the jury better to weigh and determine the value of the witness's testimony as to identification.

Defendant also urges that the remark of the trial court that he would let the Supreme Court rule again on the Baldwin case was prejudicial error. Granting that such remark should not have been made, we do not think it prejudiced the defendant in the trial. Juries are composed of laymen presumably not versed in legal procedure. We think it not at all likely that any member of the jury thought of the court's remark as an intimation that the court believed defendant guilty or that he would be convicted, unless perchance such idea was suggested by the language of defendant's objection itself, in which event he could not complain. But we do not think that either the court's remark or defendant's objection influenced the verdict.

A number of other rulings are alleged as errors in defendant's motion for new trial, some of which are not sufficiently specified in the motion to preserve them for review. But none are presented in his assignments of error and brief in this court except those above discussed. In fact he expressly states in his brief that he rests his case here on those two points alone. However, we have examined the record, having in mind all of the alleged errors which are sufficiently specified in the motion for new trial and find no reversible error. The information, verdict and judgment are in due form and sufficient.

There being no reversible error in the record and the verdict being supported by substantial evidence, the judgment is affirmed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.