**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Chester WARD, Defendant-Appellant.**

**No. 35561.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 21, 1975.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Ellen S. Roper, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., John D. Chancellor, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

Charles D. Kitchin, Public Defender, James C. Jones, Asst. Public Defender, St. Louis, for defendant-appellant.

DOWD, Presiding Judge.

Defendant was convicted by a jury in the Circuit Court of the City of St. Louis of the first degree murder of one Michael Collor (§ 559.010 RSMo 1969, V.A.M.S.). The court sentenced him under the Second Offender Act (§ 556.280 RSMo 1969, V. A.M.S.) to life imprisonment. He appeals.

The prosecution's case rested largely on the testimony of one Jeannette Johnson, which was as follows:

On October 16, 1972, at about 4:00 p. m., the deceased Collor was visiting at the home of Miss Johnson. Joel Rice and his wife, Antonia, drove up to the house. Antonia Rice is Miss Johnson's sister. She had been having an affair with the deceased, which had terminated a short time previously. Joel Rice asked Michael Collor where a "Superfly" record was. Collor said he had no record and Joel said, "We'll be back."

That evening, Michael Collor was again at Miss Johnson's house. Also present were one Joseph Sims and Miss Johnson's four children. Someone came to the door. Miss Johnson opened it and saw Joel and Antonia Rice, and three men whom she did not know. Antonia Rice asked Collor to come to the door. As he was doing so, both Joel and Antonia told one of the other three men (whom Miss Johnson identified as defendant) to shoot Collor. Defendant stepped into the doorway, raised a pistol, and fired two or three shots, killing Collor. Miss Johnson was standing by the door, her two year old child at her feet, when defendant began to shoot. She then hid behind the door, and kicked it closed. The Rices, the defendant, and their companions fled.

Sims, meanwhile, had fled through a back window. He heard the shots fired, but did not see who fired them. Miss Johnson, then, was the only witness who identified defendant as the murderer.

Prior to Miss Johnson's testimony at trial defendant moved to suppress her identification. Defendant produced evidence which showed the following: Some time after the crime, a detective from the St. Louis Police Department visited Miss Johnson, and showed her five or six photographs. Miss Johnson identified a photograph of defendant as that of the killer.

About a week after the photograph demonstration, a lineup was held. Miss Johnson, two police officers (one of whom was in the back with prisoners) and two attorneys from the St. Louis Public Defender's Office were present. Four suspects, including defendant, were in the lineup. There was conflicting testimony as to what Miss Johnson said and did at the lineup. Leo DeVere, a police officer first said that Miss Johnson nodded her head, pointed, and said, "This is the subject." He then said, "She never said anything. She just nodded and pointed."

Miss Johnson said she pointed her finger at defendant and said, "That's him."

David Adams, of the Public Defender's Office, testified that she said, "He looks like the man right there," and "Number 2 [defendant] looks like the picture of the guy they showed me."

The trial court dismissed the motion to suppress, saying, "[T]he Court finds that the principles of United States v. Billie Joe Wade were not violated and that the lineup was not tainted by unfairness and the court finds there were attorneys present from the Public Defender's Office and that from the totality of circumstances shown in this case the identity of the defendant has a source independent of any alleged illegal lineup and these findings are made by the Court beyond reasonable doubt."

The trial proceeded, with Miss Johnson testifying that defendant was the murder-

er. The evidence showed that defendant was arrested in Tupelo, Mississippi, on October 23, 1972, seven days after the murder.

At the close of the evidence, the prosecutor asked for, and was given, a flight instruction. The jury was told that if it found that defendant had fled from Missouri for the purpose of avoiding arrest and trial, the jury could consider that fact in reaching its verdict.[1] Defendant objected to this instruction, claiming that it was not supported by the evidence.

In closing argument, defendant's counsel sought to attack Miss Johnson's credibility. He told the jury that, by accusing defendant of the murder, Miss Johnson was taking suspicion away from her sister, Antonia Rice. The prosecutor, in his rebuttal argument, responded to this point by arguing that Miss Johnson's testimony implicated Antonia Rice as well as defendant, and that Mrs. Rice would be tried and convicted. Defendant's objection to this line of argument was overruled.

On this appeal, defendant argues, first, that the trial court erred in "failing to rule on defendant's motion to suppress identification." As noted above, the court did rule on the motion, stating that the principles of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), had been complied with. Defendant argues, however, that the court's ruling on his motion was not responsive because his challenge was based, not on United States v. Wade, *supra*, (dealing with the right to counsel at a post indictment lineup), but on Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (dealing with the due process right to have identifica-

tions free of improper suggestion, judged by the "totality of the circumstances.")

■ This argument, that the court's ruling did not respond to defendant's motion, was not made below, either at the time of the denial of the motion or in defendant's motion for new trial. It has not been preserved and cannot be made for the first time here. City of Kansas v. Narron, 493 S.W.2d 394, 398 (Mo.App.1973).

However, even if the argument had been properly preserved, it would still fail. Contrary to defendant's assertion, the trial court did make a ruling on the totality of the circumstances. The court held that the lineup "was not tainted by unfairness" and that the in-court identification of defendant by Jeanette Johnson had "a source independent of an alleged lineup." This constituted a ruling on defendant's motion, and it is clear the motion was overruled.

Defendant next contends that even if trial court ruled on the motion (which it did), the court erred in overruling the motion. Defendant's argument is the lineup was so unduly suggestive that Miss Johnson's testimony is inadmissible as a matter of law.

■ Defendant has the burden of showing unfairness as a matter of law. He argues that Miss Johnson's alleged statement that "Number 2 [defendant] looks like the picture of the guy they showed me" shows that Miss Johnson was improperly influenced by the earlier photographic identification.

■ The evidence as to whether Miss Johnson made this statement is conflicting. Only Mr. Adams from the Public Defend-

---

1. The full text of the instruction (Instruction No. 6) was as follows:

"The court instructs the jury that if you believe and find from the evidence, beyond a reasonable doubt, that the defendant immediately or shortly after the incident described in the evidence, fled from his usual place of abode in the State of Missouri for the purpose of avoiding arrest by the officers of the law and trial for an offense, if you find an offense was committed at the time

in question and that defendant committed it, then such flight, if you find he did so flee, is a circumstance which may be taken into consideration by you in connection with all the other facts and circumstances in the case, in determining his guilt or innocence of the charge placed against him in the Indictment, and unless you so find the defendant fled from the State of Missouri for the purpose of avoiding arrest and prosecution in this cause then you shall not consider the same in arriving at your verdict."

er's Office recalled the statement; Miss Johnson and Officer DeVere did not. The trial court could properly have found that such a statement had not been made.

■ Furthermore, the trial court found Miss Johnson's in-court identification to be supported by a source independent of the lineup. This finding was obviously based on her testimony that she had observed defendant's face at close range for some five to seven minutes just prior to and during the shooting of Collor. Her identification of defendant was positive. The defendant has not shown unfairness as a matter of law. The identification procedure here employed did not deny the defendant due process of law. The admission of Miss Johnson's in-court identification of the defendant was not error. State v. McIntosh, 492 S.W.2d 843, 846 (Mo.1973).

■ Moreover, our Supreme Court has held that we do not consider "the totality of the surrounding circumstances" to determine whether a lineup was suggestive where, as here, the defendant had counsel at the time of the lineup. State v. Sigh, 470 S.W.2d 503, 504–5 (Mo. banc 1971). Rather, such evidence goes only to the weight to be accorded the identification. State v. Sigh, *supra,* at 505. In so holding the court said:

> "In Missouri, a judicial or extra-judicial identification by a person testifying at trial is admissible. State v. Buschman, 325 Mo. 553, 29 S.W.2d 688; State v. Pitchford, Mo.Sup., 324 S.W.2d 684; State v. Rima, Mo.Sup., 395 S.W.2d 102. The weight of such testimony is for the jury. State v. Andrews, Mo.Sup., 309 S.W.2d 626; State v. Blackmore, 327 Mo. 708, 38 S.W.2d 32. We are not alone in taking this position. In *Stovall* (388 U.S. 293, 299–300, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1971), the Court noted that the 'overwhelming majority of American courts have always treated * * * [this] evidence question not as one of admissibility but as one of credibility for the jury.' See Annotation, 71 A.L.R.2d 449."

Thus, defendant's evidence of alleged suggestiveness did not go to the admissibility of the identification. Defendant's contention of error in the trial court's overruling his motion to suppress is without merit.

Defendant next contends that the trial court erred in giving the jury a "flight" instruction, because this instruction was an unwarranted comment on the evidence. The court instructed the jury that if defendant "fled from his usual place of abode in the State of Missouri for the purpose of avoiding arrest," the jury could consider this fact in reaching its verdict.

■ The evidence of defendant's "flight from his usual place of abode" in Missouri is his arrest in Tupelo, Mississippi on October 23, 1972, seven days after the crime. The question is whether this is sufficient evidence to warrant giving the flight instruction.

In State v. Aubuchon, 394 S.W.2d 327 (Mo.1965), the Missouri Supreme Court held that a flight instruction was properly given where the evidence showed that defendant, "as he left the scene of the crime he went immediately on a journey by bus that put him in Fort Lauderdale, Florida." (Id. at 335). "The term 'flight' denotes the act of leaving the scene or vicinity of the crime." State v. Aubuchon, *supra.* The defendant being found and arrested in Mississippi seven days after the commission of the crime is sufficient basis for the giving of the flight instruction.

■ Defendant's final argument is that the trial court erred in allowing the prosecutor to argue in closing that Antonia Rice would also be convicted of Michael Collor's murder. Defendant contends that this argument was "wholly outside the evidence and beyond the issues," and was "obviously unfair and prejudicial."

Defendant has not shown in what way this argument was prejudicial. Even if it was prejudicial it was made in direct response to defendant's own argument, which implied that Antonia Rice would *not* be tried for Michael Collor's murder. De-

fendant cannot complain of the prosecutor's argument on a point which defendant himself raised. State v. Granberry, 484 S. W.2d 295, 301 (Mo. banc 1972). The argument was properly allowed.

Finding no error, the judgment is affirmed.

WEIER, CLEMENS and RENDLEN, JJ., concur.