**STATE of Missouri, Respondent,**

v.

**Robert C. MAYHUE, Appellant.**

**No. WD 34489.**

Missouri Court of Appeals,
Western District.

May 24, 1983.

James W. Fletcher, Public Defender, Anne Hall, Gary L. Gardner, Asst. Public Defenders, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a judgment entered in accordance with a jury conviction for murder first degree—§ 565.003,[1] forcible rape—§ 566.030, RSMo 1980, robbery first degree—§ 569.020, assault—§ 565.050, and armed criminal action—§ 571.015. Terms of incarceration were assessed by the jury as life imprisonment for murder; 99 years for rape; 30 years for robbery; life imprisonment for assault; and 21 years for armed criminal action. Terms were designated to be consecutive.

This appeal was originally lodged with the Missouri Supreme Court. By virtue of an amendment to the Missouri Constitution, Art. V, § 3, effective December 2, 1982, jurisdiction lies in the Court of Appeals. As noted in the jurisdictional statements of the briefs of both parties, the Missouri Supreme Court initially elected to retain this cause under its jurisdiction. Effective January 13, 1983 and by order of the Missouri Supreme Court, this case was transferred to the Missouri Court of Appeals, Western District. *State v. Martin,* 644 S.W.2d 359 (Mo. banc 1983).

Appellant presents five points of error, which in summary charge the trial court erred: (1) in allowing the jury to view a videotape of one of the victim's viewing a lineup because such evidence was hearsay, irrelevant and highly prejudicial in that the videotape served only to bolster unimpeached testimony and such testimony was not direct testimony by the victim witness; (2) in permitting the jury to view the videotape of the victim witness because it depicted and emphasized the victim's wounds and showed, without purpose, the difficulty the victim had in talking and drinking liquids and was thus prejudicial and inflammatory; (3) in failing to grant a new trial because of inflammatory argument by the prosecution; (4) in refusing to submit to the jury MAI–CR2d 3.44; and (5) in sentencing appellant for armed criminal action because the trial court lacked jurisdiction over the offense of armed criminal action in that a count for kidnapping, incorporated by reference into the armed criminal action count, failed to allege that the automobile from which appellant removed one of the victims was "the place where she was found by defendant."

Appellant does not challenge the sufficiency of the evidence, so a brief summary of pertinent facts suffices.

On the evening of July 4, 1981, appellant, accompanied by one Demetrius Herndon and Anthony Darrington, went to a local convenience store in Kansas City, Missouri. The trio had been drinking and using drugs at various times throughout the day. Their intended purpose of going to the store was to secure money by way of an armed robbery. They had a handgun in their possession. The trio perched themselves atop a wall next to the store, observing the customers.

Ultimately, the automobile occupied by the victims, Ronald Fellman and Shardell

---

1. All statutory references are to RSMo 1978 unless otherwise noted.

Super entered the store parking lot. As Fellman returned to the automobile from the store, the trio approached him, displaying the handgun and demanding money. The trio forced their way into the automobile and drove off with Fellman and Super. Some ten minutes later, the automobile was stopped. Fellman was locked in the trunk of the automobile. The trio then raped Super. While Herndon was raping the woman, Darrington called him by name. After the multiple rape, the woman was locked in the trunk with Fellman. Herndon got back into the automobile, exclaiming that he would have to kill the victims because Darrington had called out his name.

The victims pried open part of the trunk, but were unsuccessful in opening the trunk as the automobile was being driven around town. The trio drove to a liquor store. While stopped, Fellman managed to get out of the trunk. He started running toward the liquor store and screaming. As he ran, Fellman was shot and murdered by Herndon. Super observed these events through an opening in the trunk.

Appellant, who had been in the liquor store, returned to the automobile and the trio began driving again. Super, still in the trunk, stuck a tire iron out of the trunk and began waving it. The automobile was stopped at a closed service station, then started again. The automobile stopped again and Super observed appellant looking at her through the trunk opening. Appellant said something to Super and then stuck the handgun in the trunk and fired it. The bullet struck Super and went through the side of her face. The bullet did not kill her, but she played dead. Super heard Herndon urging appellant to kill Super. Appellant said that she was dead. Appellant shook her, saying, "Hey bitch, hey bitch." The trio left Super for dead and abandoned the automobile. Super managed to free herself and secured help at a nearby residence. In addition to having committed kidnapping, assault, rape, and murder, the trio had accomplished a robbery of the two victims which netted them a wrist watch, a necklace and seven dollars.

Super was hospitalized, and on July 7, 1981, while in her hospital bed, was shown a videotape of a lineup. Super identified the trio from the video lineup. Another videotape was made of Super viewing the video lineup. A videotape of appellant's confession was also made. All three tapes were displayed to the jury.

Appellant offered no evidence. The jury returned its verdict. Judgment was entered, and this appeal followed the overruling of timely filed after trial motions.

Under his point (1), appellant complains and contends that the trial court erred in allowing the jury to view the videotape of the victim's viewing the lineup because such evidence was hearsay, irrelevant, and highly prejudicial in that the videotape served only to bolster the victim's testimony which had not been impeached or discredited, was irrelevant to any issue in the case, and was not direct testimony of the victim.

This court is asked to review this matter as plain error. In his motion for new trial, appellant charged that all three videotapes were inflammatory. The record reveals and the victim testified that she did view a videotape of a lineup from her hospital bed. She testified that the videotape of the lineup was a fair and accurate representation. She further testified that the lineup contained the trio who had committed the offenses, but she did not identify the trio by name. No attempt was made by appellant to impeach the victim's identification of appellant. The tapes were viewed by the jury. The victim also testified that she was shown photo arrays before and after viewing the tape of the lineup from which, without suggestion, she selected a photo of appellant. Appellant objected to both the videotape lineup and the videotape of the victim's viewing the lineup tape. The objection was based upon the second tape (i.e., the victim's viewing the lineup tape) which allegedly contained hearsay and inflammatory statements.

Appellant contends that the trial judge committed plain error in admitting the videotape of the victim viewing the lineup tape after she had already testified that she

had viewed the lineup tape and had picked out the trio. Appellant further complains that this second tape was hearsay and admitted solely to bolster the testimony of an unimpeached witness. Appellant contends that this second tape was prejudicial by admitting compounded evidence not relevant to any issue at trial. Appellant contends that the only issue to which it would have any relevancy was the certainty of the victim's identification of appellant, which was not an issue in the case.

Appellant correctly points out that there appears no cited authority directed to the admissibility of videotapes of a victim viewing a lineup when there has been no impeachment of the identification testimony. The authorities have addressed the issue relative to lineups and photo array however, and thus provide analogous guidelines.

It should be noted that appellant suggests that videotapes pose a special problem that testimony and photos do not. Appellant's contention is based upon a conclusion that since a videotape is in reality a reenactment of the identification process, it permits the jury to practically participate in the event. Without directly saying so, appellant further suggests that this process is in some way prejudicial because "[t]his participation can only serve to dramatically bolster the witness's testimony."

This court cannot agree with such a presumptive conclusion. Videotapes are a reality and a product of our age and time. Although appellant would urge this court to label such a process as inherently unfair, there is no substance to such urging. The only question facing the courts is how such tapes, in the future, will be made a part of the justice system.

Appellant carries his contention further, charging that where, as in the instant case, there is no impeachment of the witness on the issue of identification, the jury, by viewing the tape, is "treated repeatedly to the same testimony which was not relevant to identification or any other issue in the trial anyway."

As noted above, since there is no direct authority on this issue involving videotapes, appellant is required by analogy to discuss the issue. Appellant directs the court's attention to *State v. Baldwin,* 317 Mo. 759, 297 S.W. 10 (1927). In *Baldwin,* our state Supreme Court ruled that prior consistent statements of an unimpeached witness are not admissible because they serve only to bolster the testimony of the witness which has not been questioned. The court further declared that such testimony was not original evidence as to the identification and at that point in time, was irrelevant to any issue in the case.

The so-called *Baldwin* rule prevailed some three years. In *State v. Buschman,* 325 Mo. 553, 29 S.W.2d 688 (1930), our state Supreme Court modified *Baldwin.* In *Buschman,* the witness testified at trial (in addition to making an identification) that he saw and recognized the accused at the local police station. The accused objected, citing the rule in *Baldwin.*[2] Thus, the issue was clearly defined, and in *Buschman,* our state Supreme Court ruled that the witness could testify that he recognized the accused in the lineup and stated at 690:

> It is clear from his quoted testimony that he used the word 'recognized' with reference to his own mental process, meaning merely that he knew or perceived defendant to be one of the men in question. The testimony condemned as incompetent and prejudicial in *State v. Baldwin,* supra, was testimony proving acts of the witness pointing out that defendant at the police station as the man who had robbed him, which acts were the same in effect and in principle as declarations of the witness that defendant was the man who had robbed him.

In observing and contrasting *Baldwin* and *Buschman,* appellant suggests that our state Supreme Court did not modify *Baldwin* by *Buschman,* but made a distinction between the kinds of testimony offered.

**2.** In *Buschman* at 689, the trial judge clearly recognized the then existing rule in *Baldwin,* and in overruling the objection, stated: "He may answer. I am going to let the Supreme Court rule again on that Baldwin case. If that is good law they will have to show me."

Appellant points out that the court in *Buschman* declared that *Baldwin* did not decide that "testimony given by an identifying witness on the witness stand to the effect that such a witness had on prior occasions . . . seen the defendant and recognized or known him to be the person seen by the witness at the commission of the offense." *Buschman* at 691. Respondent does not take issue with the foregoing point made by appellant, but as observed infra, counters appellant's arguments upon subsequent decisions rendered on the issue.

In a later decision, our state Supreme Court in *State v. Rima*, 395 S.W.2d 102, 106 (Mo. banc 1965) overruled *Baldwin* to the extent that *Baldwin* had held the direct testimony of witness that he "recognized" a photograph of an accused as the person he saw at the commission of the offense was inadmissible. Appellant suggests that the court in *Rima* made use of the word "recognized" as pivotal to distinguish the case from *Baldwin* as it had earlier in *Buschman*. This court does not come to the same distinctive conclusion as appellant in comparing *Rima* with *Baldwin*, but as soon to be observed infra, the question is now academic.

Following the decision in *Rima*, our state Supreme Court, in *State v. Hale*, 400 S.W.2d 42, 45 (Mo.1966) declared the *Baldwin* case "a rather bizarre case" and specifically ruled that *Baldwin* had been "expressly overruled in *State v. Rima*."

This issue again arose in the case of *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972). In *Degraffenreid*, the Missouri Supreme Court thus took the matter one step further. The court was faced with deciding whether the testimony of a third party (nonidentifying) witness concerning the extrajudicial identification by the identifying witness was admissible. The court thus compared the testimony of an extrajudicial identification by the identifying witness with the testimony of a third party witness (nonidentifying) concerning the extrajudicial identification by the identifying witness. In a factual perspective, in *Degraffenreid*, the eyewitness testified at trial

that he had looked at photos and a lineup after the commission of the offense and identified the accused from both sources. Subsequent to that testimony, a police officer testified that the eyewitness selected the accused from the photos and lineup. Thus, the question was whether the police officer could so testify. Our state Supreme Court ruled that the testimony of the eyewitness was admissible, under *Rima*, and absent some impeachment of the eyewitness, the testimony of the police officer was inadmissible as hearsay. The testimony (two extrajudicial identifications) by the eyewitness was held admissible, even though the testimony of identification was not impeached.

While appellant acknowledges the declaration that the distinction drawn by *Buschman* has "been drained of its vitality by the subsequent Supreme Court decisions," *State v. O'Toole*, 520 S.W.2d 177, 181 (Mo.App. 1975), he argues that our state Supreme Court has never rendered such acknowledgment in relation to the use of videotapes. Appellant further insists, *Degraffenreid* notwithstanding, that the videotape herein of the victim viewing the lineup was a *Baldwin* type identification and impermissibly bolstered the victim's testimony.

Appellant has missed the real question facing this court in light of the ruling in *Degraffenreid*. The question, which really consists of two parts, is whether the videotape of the victim *viewing the lineup* is the *testimony of an identifying witness* or is the *testimony of a third party* under the facts and circumstances herein and whether there is some inherent prejudice in the use of such tapes.

Prior to the videotape being shown to the jury, the victim identified the tape and testified that she had seen it the day before trial. She testified that it was a fair and accurate representation of her viewing a taped lineup. Also prior to the viewing of the tape by the jury, at the bench, the prosecutor (following appellant's objection) advised the trial court: "Everything contained on Exhibit 8 [the videotape] is offered for the limited purpose of allowing

the jury to determine the positiveness of which she made the selection, whether or not there is any suggestiveness by the police officers to her before she viewed the lineup or during the time of the lineup."

By his objection, appellant had claimed that there was, upon the tape, certain objectionable and prejudicial statements made by the victim. Following a discussion of the issue, during which the trial court was advised that the sound could be reduced so the jury could not hear the objected-to remarks, the trial court admitted the videotape "for the limited purpose outlined in the record." This limited purpose was to permit the jury to determine for itself how certain the victim was regarding her identification of appellant.

Appellant's position has already been noted above. In contrast, respondent suggests to this court that the videotape was merely an extension of the victim's testimony regarding identification at trial. Respondent suggests that the videotape testimony was adoptive. In support of this argument, respondent points to *Degraffenreid* as authority; points out that the victim verified the accuracy as to representation of the tape; the videotape, under guidance by the trial court was admitted for the limited purpose of permitting the jury to ascertain the certainty of the victim's identification of appellant; and the victim was subject to cross-examination, including her credibility because of medication, relative to the reliability of her identification.

In addition to *Degraffenreid,* both parties acknowledge the rule that "[t]estimony of an identifying witness as to his pretrial identification of the defendant is admissible ... (citations omitted ... [and] is not improper bolstering." *State v. Quinn,* 594 S.W.2d 599, 603 (Mo. banc 1980). Appellant attempts to distinguish *Quinn,* however, by pointing out that in *Quinn* and all other cases, the questioned testimony was delivered by the witness *directly* as the witness

sat on the witness stand. Appellant contends that since the questioned testimony comes from a videotape, it was, in reality, a reenactment of the identification. Appellant argues that since the videotape has an appeal to the visual and auditory senses of the jury, it "was bound to have an erroneous impact on its audience. This court cannot agree with the conclusion reached by appellant. In the first instance, in this day and age, the exposure of persons in modern society to visual aids, including videotapes, is so commonplace that to suggest such tapes have special appeal to the visual and auditory senses of the listener is a suggestion without substance. Secondly, and of more importance, the appellant incorrectly assumes that such tapes will have an "erroneous impact" on the jurors. It is just as equally plausible that a jury could be convinced that the identifying witness was uncertain in his or her identification.[3]

In extending his attack on this taped testimony, appellant contends that the taped testimony was not direct, it was made outside the courtroom without opportunity by appellant to cross-examine; and while it was introduced allegedly to prove the certainty of identification, it also served to show that the victim identified appellant from the lineup. Thus, appellant contends that the tape, in effect, put in front of the jury a statement made by the victim outside the courtroom. Appellant suggests that the posture of the evidence was similar to that in *State v. Gorden,* 356 Mo. 1010, 204 S.W.2d 713 (1947) where an extrajudicial statement by a prosecuting witness was inadmissible because it was hearsay, and *State v. Smith,* 477 S.W.2d 67 (Mo.1972), where introduction of a statement given to police by a witness was "technically improper", but not prejudicial. As a closing note, appellant further contends that the testimony was excludable because it was repetitious and cumulative.

---

**3.** See *State v. Hamell,* 561 S.W.2d 357, 361 (Mo.App.1977), wherein it was ruled (and numerous case authority is cited) that use of videotapes has been approved and there is no merit to the contention that videotapes unto themselves have a prejudicial impact or an emotional impact relative to their admissibility.

■ Prior to stating the answer to the question before this court, as noted above, it is important to briefly address these remaining contentions of appellant. First, as to appellant's contention that he was entitled to the right of counsel and to cross-examine the victim at the point of initial identification and the denial of that prejudiced his right to a fair trial, it appears that appellant is contending he was entitled to counsel and to have counsel present for purposes of cross-examination during the lineup procedures which were conducted at the preindictment stage of the proceedings. There is no guarantee of a right to counsel during preindictment stage of the proceedings. *State v. Young,* 597 S.W.2d 223, 225 (Mo.App.1980), citing *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) and *Morris v. State,* 532 S.W.2d 455 (Mo. banc 1976).

■ As to the contention that the videotape was hearsay and thus inadmissible, the rule in *State v. Quinn, supra,* dispels such contention wherein the state Supreme Court held that "[t]estimony of an identifying witness as to his pretrial identification of the defendant is admissible ... and is not hearsay because it is direct testimony as to a fact about which the witness has personal knowledge." (*Quinn,* 594 S.W.2d at 603) It is also noted that appellant had opportunity to cross-examine the victim at trial on both the tape and her in-court identification.

■ On the matter of such evidence being repetitious and cumulative, such evidence has been held not to be prejudicial. *State v. Smith, supra,* 477 S.W.2d at 71.

Thus, there remains the answering of the above two-part question, whether the videotape of the victim *reviewing the lineup is the testimony of an identifying witness or is, by its nature, the testimony of a third party,* and whether there is some inherent prejudice in the use of such tapes.

Appellant urges that the "tape" should be viewed and considered the same as the police officer's testimony in *Degraffenreid.* Respondent urges that the tape is adoptive testimony of the victim as an identifying witness.

■ It is concluded herein that the videotape of the victim viewing the lineup tape was, in fact, testimony of an identifying witness and not that of a third party, as suggested by appellant. *Degraffenreid, supra.* In addition, it is concluded that the videotape was in the nature of direct testimony by the victim identifying witness as to a fact about which she had personal knowledge and was therefore admissible. *Quinn* and *Rima, supra.*

There is no need to repeat what has been said above regarding the alleged hearsay, cumulative, repetitious right-to-counsel challenges and impermissive bolstering to testimony challenges made by appellant, as *Quinn, Smith,* and *Young* lay those challenges to rest.

■ As a closing note, while appellant has charged that the tapes were prejudicial and suggests that the use thereof is inherently prejudicial, such contention is based upon an erroneous presumption. The future use of such tapes is inevitable. Contrary to appellant's argument that their use will prejudice an accused, it is equally plausible to presume that such tapes could aid an accused, for if there is displayed therein an uncertainty of identification by a witness, such uncertainty is obviously displayed before the trier of fact for its determination.

Respondent has suggested that such tapes might very well one day be of great assistance in determining whether an identification has met the test for identification prescribed by *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and *State v. Charles,* 612 S.W.2d 778, 780 (Mo. banc 1981).[4]

---

4. In the instant case, this court is not called upon to address the rights of an accused relative to his or her being videotaped in a lineup. This court is convinced that the use of such videotapes will increase. As a mere suggestion, it appears to this court that at the time of a videotaping of a lineup, the accused should be so advised. The rationale is that if that

It is beyond the scope of this opinion to debate the ultimate acceptable use of such videotapes, and it suffices to say that there was no error committed by the trial court herein upon permitting the jury to view the videotape of the victim witness viewing the lineup. There was no error because the videotape was direct testimony of the victim witness, *Degraffenreid, supra,* and it was testimony as to a fact about which the witness had personal knowledge. *Quinn* and *Rima, supra.* This court can find no reason to distinguish videotapes in such manner as to require their admissibility to be ruled differently than either verbal testimony or photographs. It is therefore ruled herein that such tapes are admissible under the rule in *Degraffenreid, Quinn,* and *Rima, supra.*

There is no merit to appellant's point (1) and it is ruled against him.

Under his point (2), appellant again attacks the admission of the videotape of the victim witness viewing the lineup because the tape unduly emphasized the wounds of the victim, displayed her difficulty in speaking and drinking liquids, and was therefore prejudicial because it was inflammatory.

At trial, appellant objected to the admission of this tape because of alleged inflammatory statements of the victim contained on the tape. As noted above, the trial court ordered the volume turned off when that portion of the alleged inflammatory statements were made. In addition, the prosecution suggested a limiting instruction be given to the jury, directing the jury to view the tape only to determine the credibility of the victim's identification and the positiveness of the identification. Appellant declined the limiting instruction and proceeded upon a standing objection that the tape was inflammatory.

■ Once again, analogy to other forms of evidence must be made since there is no direct authority upon the use and abuse of videotapes as evidence. Appellant acknowl-

edges the admissibility of photos, even if gruesome, repugnant and shock-provoking, if those photos are relevant to a material issue, *State v. Cummings,* 607 S.W.2d 685 (Mo.1980), and if such photos have probative value, *State v. Sempsrott,* 587 S.W.2d 630 (Mo.App.1979). Photos are admissible if they show the location, nature, and extent of wounds of a deceased if those photos assist the trier of fact toward a greater understanding of facts given by witnesses, or if they corroborate the testimony of the state's witnesses, or if they aid in the establishment of any element of the state's case. *State v. Love,* 546 S.W.2d 441, 451 (Mo.App. 1976).

Appellant complains herein that the questioned videotape was introduced for the sole purpose of demonstrating the victim's positive identification of appellant. He further argues that the identification was not at issue. Appellant proceeds further to argue that since the victim also testified directly as to type, nature, location, and extent of her wounds, the tape could not have provided the jury with any greater understanding of those particular facts than as elicited directly from the witness. Appellant then argues that the tape was not necessary to corroborate the testimony of the victim witness. Appellant concludes that the probative value of the tape, if any, was outweighed by its prejudicial impact. In support of his contention, appellant cites *State v. Floyd,* 360 S.W.2d 630, 633 (Mo.1962), where it was ruled: "[P]hotographs should not be admitted where their sole purpose is to arouse the emotions of the jury and to prejudice the defendant." He also cites *State v. Robinson,* 328 S.W.2d 667 (Mo.1959) where "obscene", "offensive", "vulgar", "horrid" and "repulsive" photos of the deceased were ruled inadmissible. In both *Floyd* and *Robinson,* the photos were excluded because in *Floyd,* it was ruled that they were not necessary or offered for any conventional reason; and in *Robinson,* be-

taping includes any exculpatory evidence, then the accused could be accorded the benefit of that evidence by discovery. If the state were to elect not to use the videotape, then such exculpatory evidence might never be available to the accused. It is left to future decisions to rule this question if and when it is ever properly presented for review.

cause the accused had admitted every fact which the photos may have tended to prove. Appellant likens the videotape herein to the photos in *Floyd* and *Robinson* and concludes that the videotape proved no vital issue since the defense never questioned the positiveness of the victim's identification.

Appellant attempts to narrow attention to his allegation that since identification was not an issue, an allegation not conclusively supported by the record due to the extensive and thorough cross-examination by appellant's counsel on the issue of identification, the videotape thus related to no issue in the case and hence was inadmissible. What appellant fails to acknowledge is his entry of a plea of not guilty to multiple charges which included the assault upon the victim witness. The prosecution had the burden of proof on all issues including the assault.

The determination of the admissibility of demonstrative evidence is within the discretion of the trial court, and absent a showing of an abuse of that discretion, there is no error. *State v. Clemons*, 643 S.W.2d 803 (Mo. banc 1983); *State v. Burnfin*, 606 S.W.2d 629 (Mo.1980); and *State v. Holtkamp*, 588 S.W.2d 183 (Mo.App.1979). The balancing of probative value versus prejudicial effect is left to the trial court. *State v. Holmes*, 609 S.W.2d 132 (Mo. banc 1980).

Demonstrative evidence which tends to establish any fact in issue and aids the fact-finder in deriving a correct decision is admissible. *Burnfin, supra.* Appellant denied that he had shot the victim witness. This was an issue at trial, and the burden of proof upon that issue was upon the prosecution. On this appeal, the question is not, as contended by appellant, that the videotape did not tend to prove any issue because identification was not challenged. The case involved more than just the issue of identification, to wit, the proof of the charge of assault. There was an issue joined by appellant's plea of not guilty to that charge. The only question is whether the videotape was, by its nature, so inflammatory that it was prejudicial and hence inadmissible.

*Clemons* squarely rules this precise point. The instant case, like *Clemons*, involved the perpetration of gruesome acts. The state Supreme Court in *Clemons* declared the rule found applicable and controlling herein on this issue. It stated:

> Admitting the photographs in question was a discretionary act and erroneous only if the ruling resulted in fundamental prejudice and abuse of discretion. *State v. Burnfin*, 606 S.W.2d 629, 630 (Mo.1980). Insofar as the photographs tend to be shocking or gruesome it is because the crime is of that sort. *Clemons* at 805.

The only question is whether, by their nature, videotapes are to be considered any differently, relative to their admissibility, than photos. Videotapes are a recognized form of communication in various aspects of our present-day society. There is nothing upon this record which tends to cast doubt upon the veracity of the challenged tape. There is nothing which prevents this court from concluding that videotapes are as acceptable as evidence as are photos, subject to the same rules and limitation of their use. Quite the contrary, since no challenge is made to the veracity of the videotape herein, this court must conclude that they are a permissible means of evidence and are thus admissible if all other requirements relative to their admissibility are met, such as are required in the use of photos and other demonstrative evidence.

Appellant has failed to convince this court how the trial court abused its discretion in the admission of the videotape. Appellant's point (2) is meritless and is ruled against him.

Under his point (3), appellant charges that the trial court erred in not granting him a new trial because of inflammatory argument by the prosecution.

Appellant failed to object to the now-challenged comments and has failed to preserve anything for review. *State v. Brogan*, 488 S.W.2d 623, 625 (Mo.1973). Appellant should have objected at the proper time to permit the trial court to rule the

objection, and if any error in the use of language occurred, the trial court would be given the opportunity to correct the matter. *State v. Savage*, 522 S.W.2d 144 (Mo.App. 1975). Review by this court is for plain error pursuant to Rule 29.12(b). Under that rule, the judgment is to be affirmed absent the showing of a manifest injustice or miscarriage of justice.

▇ Appellant contends that his right to a fair trial was prejudiced because of the following prosecutorial comment:

I suggest to you ladies and gentlemen, that no person in their right mind *would want to remember three black men getting on her naked body, dumping their seed in her vagina;* I suggest to you that no one in their right mind would want to remember seeing their dreams and their hopes for their future life fall in the street dead; handsome young man who she was in love with, who had done nothing. (emphasis added)

Appellant displays righteous indignation to the above comment and charges racial emphasis to his prejudice.

There are a few facts upon this record which appellant fails to acknowledge in this charged error. First and foremost, it was evident to everyone associated with this trial that appellant is black and the victims are white, so the racial relationship was of no surprise to anyone, including the jury. Secondly, there is medical evidence upon the record that live spermatoza were obtained by swab from the victim's vagina. In addition, the victim testified to a conversation between appellant and herself wherein appellant asked the victim if she was enjoying him during the rape. To this, the victim was asked: "Did Robert Mayhue say anything to you?" She responded, "He was asking me if I was enjoying it, if I had ever had a black man before?" Q.: "Were you responding to any of those question?" A.: "I answered no to both."

Appellant argues that the prosecutor's comments were an attempt to derogate him because of his race. This court concludes that the comment made no such attempt. There is no showing upon this record that the prosecutor's comments justify a manifest necessity for a retrial.

▇ The record reveals that following the above-quoted portion of the prosecutor's argument, the following occurred:

Prosecutor: "Everyday of her life she will be raped in her mind ..."

Defense Counsel: "Again, I am going to object that is improper. The prosecutor is asking what is in the mind of another witness."

The Court: "The objection is sustained."

Defense Counsel: "I would ask that the jury be instructed to disregard the last statement."

The Court: "The jury is so instructed."

Appellant did not move for a mistrial on the above, and he received all the relief he asked for. It should not be interpreted that the foregoing was basis for a mistrial if requested, as that question is not before this court or reached herein.

The evidence upon this record as to appellant's guilt is overwhelming. It reveals the commission of multiple gruesome and brutal acts upon the victims. The final argument, appellant's contention notwithstanding, did not endeavor to draw upon racial bias. On this appeal, appellant has suggested such racial prejudice without substance to support it.

There was no manifest injustice or miscarriage of justice in the trial court's not having sua sponte declared a mistrial. Appellant's point (3) is meritless and is ruled against him.

Under his point (4), appellant charges that the trial court erred in its refusal to submit to the jury MAI–CR2d 3.44 [Confession or Admission of Defendant instruction], either with or without the parenthetical expressions about appellant understanding what he was saying and doing, because there was evidence that appellant had taken speed and drank alcohol prior to his videotaped confession, and in any event, appellant did not testify and deny or admit the facts in his confession.

Appellant offered to the court the following instruction:

### Instruction No. A

Evidence has been introduced that the defendant made certain statements relating to the offenses for which he is on trial.

If you find that a statement was made by the defendant, and that at that time he understood what he was saying and doing, and that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you may give it such weight as you believe it deserves in arriving at your verdict.

However, if you do not find and believe that the defendant made the statement, or if you do not find and believe that he understood what he was saying and doing, or if you do not find and believe that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you must disregard it and give it no weight in your deliberations.

The foregoing instruction was refused by the trial court upon the objection by the state.

In regard to the offered instruction, the record reveals the following discussion:

On Instruction 3.44, which I understand there is some debate on—

MR. SCHAFFER: As submitted, defendant's Instruction No. 3.44 includes those phrases in parenthetical impressions, including the second paragraph as it appears in the instruction book, there's been no evidence that the defendant was drugged or intoxicated, or that he, in any way was not cognizant of what he was saying or understood what he was saying, therefore, in accordance with note No. 3, the defendant is not entitled to that instruction, the State would object to the giving of that instruction, it is improperly worded under these facts.

MR. WHEELER: The officer testified he did not know of his own knowledge one way or the other whether or not the defendant was using drugs at the time he talked to him, at the time he took the video taped confession and I think that evidence on its face is sufficient to warrant the leaving of those phrases in Instruction 3.44, offered by the defense.

THE COURT: Okay. Is that it?

Based on the argument, and the Court's review, as the Court recalls the evidence to be, the instruction presently submitted, 3.44, the Court will refuse to give the instruction in its present form.

MAI–CR2d 3.44 reads as follows:

3.44 Confession or Admission of Defendant

Evidence has been introduced that the defendant made certain statements relating to the offense for which he is on trial.

If you find that a statement was made by the defendant(, and that at that time he understood what he was saying and doing), and that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you may give it such weight as you believe it deserves in arriving at your verdict.

However, if you do not find and believe that the defendant made the statement(, or if you do not find and believe that he understood what he was saying and doing), or if you do not find and believe that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you must disregard it and give it no weight in your deliberations.

Appellant bases his contention upon Notes on Use, No. 1 and No. 3 to MAI–CR2d 3.44, which read as follows:

1. This instruction must be given if requested either by the state or by the defendant. It is equally applicable to confessions and to admissions short of confessions.

3. The matter in parentheses in the second and third paragraphs should be included in the instruction if there is evidence that the defendant did not under-

stand what he was saying or doing at the time of the statement, whether because of mental disease or defect or because of intoxication, drugged condition, or other mental incapacity, latent or induced, temporary or permanent.

■ Before any party is entitled to an instruction, there must be evidence to support its submission, and absent that evidentiary basis, it is not error to refuse the submission of an instruction. *State v. Moore,* 620 S.W.2d 56 (Mo.App.1981).

Two days following the commission of the offenses, appellant was questioned by police officers. A videotape of that questioning was made with the permission of appellant. Before considering the videotape itself relative to this charged error, reference is made to other evidence relative to appellant's physical and mental condition. On both direct and cross-examination, the investigating officers were asked about appellant's physical appearance, i.e., was there any smell of alcohol, was his speech coherent, were his eyes dilated, etc.? There is no evidence from these officers or any other source which supports appellant's alleged physical or mental impairment.

■ Concerning the videotape, it should be noted that this court has viewed the tape. At the commencement of appellant's taped confession, he was given his *Miranda* warning in full. He was asked if he understood his rights, to which he responded affirmatively. He was then asked if any promises had been made or if any coercion had been employed in his giving his confession, to which he responded in the negative. This preliminary discussion was followed by an interview of appellant for some 20 to 25 minutes, during which minute details of and about the commission of these offenses were related. During this entire interview, appellant was attentive and responsive to the questions asked of him. His speech was clear and coherent. The videotape completely dispels his present contention that since he had consumed liquor and taken drugs two days prior to giving his confession, the "jury could infer that appellant did not know what he was saying or doing

on July 6, 1981 when he confessed on videotape." There was no evidentiary basis to support appellant's present contention that a jury could infer he did not know what he was doing or saying when he gave his confession. Everything on this record, including the videotape, indicates quite the contrary, that is, that appellant had complete control of his physical and mental faculties and he suffered no impairment as to his ability to understand, comprehend, and engage in responsive participation in the giving of his voluntary confession.

Appellant broadens his argument by saying that if there was insufficient evidence to support his contention that his mental process was affected, the trial court should have given MAI–CR2d 3.44 anyway without "the expression about appellant understanding what he was saying and doing."

It can be noted from the above-quoted portion of the transcript that appellant elected to stand upon the wording of his tendered instruction. The record reveals a discussion concerning the tendered instruction, and the trial court's correct determination that the instruction as tendered was improper. The record fails to reveal any further action by appellant regarding submission of MAI–CR2d 3.44.

■ Disposition of this alleged error is reached by two approaches, either of which, standing alone, would suffice. First, respondent has correctly pointed out appellant's failure to preserve this error for review in compliance with Rule 29.11(d). That rule requires:

(d) Motion for New Trial in Jury Tried Cases—Allegation of Error Required. In jury tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial except that questions of jurisdiction of the court over the offense charged, questions as to whether the indictment or information states an offense and questions authorized by Rule 27.07 to be presented by motion for judgment of acquittal need not be included in a motion for new trial. Where definite objections or requests

were made during the trial, including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient. Any specific objections which were not made at the trial before submission to the jury, must be set forth in the motion for new trial to preserve the error for review. Allegations of error based on matters occurring or becoming known after final submission shall be specifically set out.

The reason that the above rule is applicable is that appellant tendered MAI–CR2d 3.44, inclusive of the "parenthetical" additions required by Note 3 of the Notes on Use to MAI–CR2d 3.44. The court properly rejected the tendered instruction in that form and refused to submit it. At this juncture, appellant did nothing except (through counsel) make claim that the defendant had no responsibility to give an instruction in a form chosen by the state. While the Notes on Use (Note 1) require the giving of MAI–CR2d 3.44 upon the request of either party, that requirement finds no application herein because following the refusal of appellant's improperly worded instruction, there was no request for submission of MAI–CR2d 3.44. It is evident from the record that appellant insisted on MAI–CR2d 3.44, including the "parenthetical" language. This includes his motion for new trial. With that insistence and it being clear the court refused to submit the instruction in the form tendered because of the total lack of evidence to support it, there is nothing to show appellant requested submission of an MAI–CR2D 3.44 instruction.

Secondly, while the giving or failure to give an instruction is violative of Rule 28.02 relative to MAI–CR2d instructions, the prejudicial effect of such giving or failure is to be judicially determined. Rule 28.02(e). In the instant case, the trial court's refusal to submit appellant's tendered MAI–CR2d 3.44 instruction because it lacked any evidentiary basis was not error, nor was it prejudicial to appellant. Furthermore, absent any request for submission of MAI–CR2d 3.44 after the court ruled the tendered instruction was improper, this failure

of a request failed to make note (1) Notes on Use to MAI–CR2d 3.44 applicable to this case. Under the facts and circumstances herein, this court determines the failure to submit MAI–CR2d 3.44 was not prejudicial to appellant.

Appellant's point (4) is meritless and is ruled against appellant.

Under his final point (5), appellant charges that the trial court erred in sentencing him for armed criminal action during the course of kidnapping because the court did not have jurisdiction over the offense of armed criminal action in that the count of kidnapping was dismissed by the state and incorporated by reference into the armed criminal action count. The armed criminal action count did not allege that the automobile at Brush Creek and Paseo, from which appellant removed the victim, was "the place where she was found by appellant."

Reduced to a more simple form, appellant's asserted error under his point (5) is that the trial court did not have jurisdiction over him to sentence him for armed criminal action. His contention is premised upon his conclusion that Count VI, charging the offense of kidnapping, was fatally defective for failure to allege that the automobile at Brush Creek and Paseo was the place where the victim Shardell Super was found by defendant.

### COUNT VI

The Grand Jurors of the County of Jackson, State of Missouri charge that the defendant, ROBERT C. MAYHUE, and others, in violation of Section 565.110, RSMo, committed the class B felony of kidnapping, punishable upon conviction under Section 558.011.1(2), RSMo, in that on or about July 5, 1981 about 12:30 a.m. in the County of Jackson, State of Missouri, the defendant, ROBERT C. MAYHUE, and others unlawfully removed Shardell Super without her consent from an automobile at Brushcreek and Paseo, Kansas City, Missouri, for the purpose of facilitating the commission of a felony,

to-wit: robbery of Shardell Super, and either before or during the commission of such offense, with the purpose of promoting such offense, the defendant, ROBERT C. MAYHUE, aided in committing and attempting to commit such offense.

Prior to trial, the prosecution dismissed Count VI on the basis that it was a lesser included offense of the armed criminal action count (Count VII).

Appellant lists the elements of the offense of kidnapping under *State v. Crisp,* 629 S.W.2d 475, 477 (Mo.App.1981) and § 565.110, RSMo 1978 as (1) unlawfully removing another; (2) without his consent; (3) from the place where he is found; and (4) for one of five different purposes. It is number (3) of the foregoing which appellant contends is lacking in Count VI (incorporated within Count VII upon dismissal of Count VI), and the failure to include such a factual allegation rendered the indictment fatal and voided the court's jurisdiction.

Stated another way, appellant contends that there is a fatal defect in the indictment because Count VI fails to allege that the automobile, at Brush Creek and Paseo from which it was charged he removed the victim, was "the place where she was found by defendant."

Judicial review of indictments and informations is controlled by Rule 23.01 and in determining the sufficiency of the present indictment, 23.01(b) 2 is found to have precise application. 23.01(b)2 reads: "State plainly, concisely, and definitely the essential facts constituting the offense charged."

Count VI above complies with Rule 23.01 and more precisely with 23.01(b)2. Count VI charges appellant with having unlawfully removed the victim "without her consent from an automobile at Brushcreek and Paseo, Kansas City, Missouri." It is obvious, from the face of the indictment, appellant is charged with the unlawful removal of the victim without her consent *from the place where she was found by appellant, to wit, the automobile at Brushcreek and Paseo.*

The basic purpose of an indictment and information is twofold. First, it is to sufficiently inform an accused of the nature of the accusation made against an accused by the state. Secondly, it must be sufficient so if acquitted of the alleged offense, the accused cannot be again charged and tried upon that same offense.

Appellant is correct in his contention that a fatal defect, flaw, or variance in an indictment renders the court without jurisdiction. *State v. DiLiberto,* 537 S.W.2d 671, 672 (Mo.App.1976). In the instant case, however, no such fatal flaw, defect or variance is to be found within Count IV. There is substantial compliance, see Rule 23.01(e). Count VI was sufficient to have informed appellant of the charge against him. *State v. Williams,* 588 S.W.2d 70 (Mo.App.1979).

Appellant's point (5) is meritless and is ruled against him.

The judgment is in all respects affirmed.

All concur.